[North Birmingham Street Railway Co. v. Calderwood.]

# North Birmingham Street Railway Co. *v.* Calderwood.

*Action for Damages by Passenger, for Personal Injuries.*

1. *Variance as to place of accident.*—In an action against a street railway company, as a common carrier, to recover damages for personal injuries sustained by plaintiff, a passenger, in attempting to alight as the car again started; the place at which cars might lawfully stop being prescribed by municipal ordinance, and the duties of the railway company being dependent on the lawfulness of the place at which the cars were stopped for plaintiff to alight; if the complaint alleges that the injury occurred on the *west* side of the street, where the cars were accustomed to stop for passengers, and where they might lawfully stop, while the proof shows that it occurred on the *east side*, where they were forbidden to stop, the variance is fatal.

2. *Contributory negligence; burden of proof.*—Contributory negligence is matter of defense, the *onus* of proving which is ordinarily on the defendant; but, when the plaintiff's own evidence, as to the charge of negligence on the part of the defendant, inculpates himself also, this rule does not apply.

3. *Same; when sufficient.*—Contributory negligence is a complete defense to the action, when it is one of two or more concurring efficient causes, and it is not necessary that it should be the sole proximate cause.

4. *Charge on conflicting evidence, in favor of duty.*—When it is a material question in the case whether the defendant's cars, at the time of the injury to plaintiff, stopped on the east or on the west side of the street, a charge instructing the jury that they "may indulge the presumption, in the absence of proof to the contrary, that the train stopped on the west side, where by law it was required to stop," is erroneous.

5. *Abstract charge.*—A charge given can not be considered abstract, when there is any evidence, however weak or inconclusive, tending to support its assumptions, or facts hypothetically stated.

6. *Contributory negligence, as question of fact or of law.*—When the evidence shows that the plaintiff was injured while alighting from the defendant's street car, in which she was a passenger, but is conflicting as to the side of the street on which the car was stopped, one side only being a lawful stopping place; and there is evidence. showing that the conductor was not in his place at the time, and that the train stopped in the street in apparent response to a pull of the bell by plaintiff, and she had reasonable ground to believe that it stopped for the purpose of allowing her to alight, although it had not reached the proper stopping-place; the question of contributory negligence *vel non* on her part is properly left to the jury, as a question of fact.

7. *Municipal ordinances; presumption as to knowledge of.*—Although the courts do not take judicial notice of municipal ordinances and by-laws, all residents within the municipality are charged with knowledge of them; and when any person contracts, within the limits of the municipality, in reference to a matter which is governed by a police regulation, he is charged with knowledge of its provisions.

[North Birmingham Street Railway Co. v. Calderwood.]

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by Mrs. Martha M. Calderwood, against the appellant, a domestic corporation, to recover damages for personal injuries sustained by plaintiff in attempting to alight from one of the defendant's cars, at the intersection of First avenue and Twentieth street, in the city of Birmingham. The accident occurred on the 2d October, 1887, and the action was commenced on the 1st October, 1888. The defendant pleaded not guilty, and contributory negligence; and issue was joined on both of those pleas. It appeared on the trial, as the bill of exceptions shows, that the plaintiff resided in Mississippi, and was, at the time of the accident, in Birmingham on a visit to her sister, Mrs. M. G. Cobb, who was with her on the car at the time; that they had gone down town in the morning, on one of the defendant's trains or cars, and were returning in the afternoon; and that they attempted to alight from the car, on their return, when it stopped in the street at or about the place at which they had entered it in the morning. The plaintiff herself thus testified, among other things: "I did not know the conductor, nor did any one come near us to collect fare. I do not know where the conductor was, and I do not know what he was doing. We gave notice by pulling the strap. . . The only notice given was by pulling this strap, and thereon the car came to a stop. I can not state how long it stopped, but it was not long enough to enable me to get off, though I started at once. It had come to a full stop when I moved, and I was in the act of leaving when it started again. I did not hear any signal." Mrs. Cobb thus testified: "We got on the dummy at First avenue, near Twentieth street; and, on returning, we got off at the same place. . . I rang the bell by pulling the strap, and the car stopped; and we both arose at once to get off." The other witnesses examined by plaintiff testified only as to the extent of her injuries.

The defendant offered in evidence an ordinance of the city of Birmingham regulating the running and stopping of street cars, which provided, among other things, "that all street cars operated within the corporate limits shall make one stop to receive and deliver passengers between the crossings of the several streets and avenues, and this stop shall be made just beyond the far crossing from said car or dummy, so as to clear the street or avenue from the side-walk; and any

conductor, driver, or engineer, operating any car in violation of this ordinance, shall be deemed guilty of a misdemeanor," &c., punishable by fine of not more than $100. The defendant offered in evidence, also, the rules and regulations which it had adopted for the running of its cars, and which were in force at the time of the accident to plaintiff. One of these rules was entitled *"Conductor's Signals,"* and was in these words: "One tap of the signal bell is a notice to stop; two taps is a signal to start; three taps of the bell, when the train is at rest, is a signal to back; three taps, when the train is running, is a signal to stop at once; and four taps is a signal to run slower." The defendant proved, also, "that a notice printed in large type, seventeen inches long, and seven inches high, was posted in four places in each car," in these words: *"Passengers must not pull the bell-cord, but motion to the conductor when they wish to get off."* The defendant introduced evidence, also, tending to show that when the conductor gave a single tap of the bell, as a signal to stop, the engineer did not stop the cars until he reached the next regular-stopping-place, or crossing; that the engineer sometimes stopped the cars, without a signal from the conductor, on account of a pressure of vehicles, or other temporary obstructions in the street; and that he moved on again, in such instances, without any signal from the conductor. On this evidence, the theory of the defense was, that the plaintiff was guilty of contributory negligence in attempting to leave the cars when they had been stopped temporarily, without a signal from the conductor, and before reaching the regular stopping-place.

The court gave the following (with other) charges, at the instance of the plaintiff, the defendant reserving an exception to each: (2.) "Contributory negligence on the part of the plaintiff, to avail as a defense in this action, must be the proximate cause of the injury; and if it is not the proximate cause of the injury, it can not be invoked as a defense." (3.) "The burden of proof, establishing contributory negligence, rests on the defendant." (4.) If the jury believed from the evidence that, on the day named, plaintiff was a passenger on the defendant's cars; "and that the train stopped on First avenue, near Twentieth street, for the purpose of letting the passengers get off; and the testimony leaves it uncertain whether it stopped on the east or on the west side; then the jury would have the right to infer and indulge the presumption, that it stopped on that side where the city or-

dinance and the rules of the company required it to stop, and not on that side where it was forbidden to stop." (5.) If the jury believe from the evidence that, on the day named, "the defendant's train came to a full stop on First avenue near Twentieth street, on the west side thereof; and that this was the place at which the trains usually stop for letting off passengers; and that passengers on the train, including plaintiff, desired to get off,—then it was defendant's duty to stop the train at that time and place, a sufficient length of time to allow the passengers to alight from the train; and if they further believe from the evidence that plaintiff immediately started to get off, and continued with due and reasonable care to get off after she started; and the train suddenly moved forward, without allowing sufficient time for her to get off, and threw her to the ground with such force as to cause a severe and painful injury, without fault or negligence on her part,—this is an act of negligence on the part of the defendant, which will sustain an action; and if the jury further believe from the evidence that, by reason of the negligence of the defendant in thus moving forward its train, and without fault or negligence on the part of the plaintiff, she received a severe and painful injury, and has suffered great mental and physical pain, and that said injury is permanent, and that she has suffered great mental and physical pain as the proximate cause thereof,—then they may find for the plaintiff, for such amount of damages as the proof may show she ought to receive."

The defendant requested the following (with other) charges in writing, and duly excepted to their refusal:

1. "If the jury believe the evidence in this case, they must find for the defendant."

2. "If the jury believe from the evidence that, on October 2d, 1887, on plaintiff's return from North Birmingham on defendant's train, she attempted to leave the train on the east side of Twentieth street, without giving notice to the conductor in charge of the train; then they must find for the defendant, unless the proof further shows that the conductor, or some other employee of the defendant, knew of her purpose to leave the train in time to warn her not to make the attempt, and failed to give such warning."

3. "There is no evidence before the jury showing, or tending to show, negligence on the part of the defendant, or any of its employees or servants, which caused or contributed to the injuries of which plaintiff complains; and the jury must,

therefore, find for the defendant, without regard to the plaintiff's hurts, injuries, or sufferings."

4. "Every person of mature years is bound to know the law; and in the consideration of this case, the jury must regard the plaintiff as having known, on October 2d, 1887, the laws of the city of Birmingham fixing the stations on street railroads at which they were required to receive and deliver passengers, and prohibiting them from stopping elsewhere for that purpose; and if the evidence satisfies the jury that the train on which plaintiff was riding, on her return from North Birmingham, was forbidden by law to stop on the east side of said street,—then they must find for the defendant, unless the proof further shows that plaintiff, before attempting to leave the train, had given notice to the conductor, or some other servant of the defendant on the train, plainly and distinctly, of her purpose to leave said train on the east side of said street, and that said conductor (or other servant of defendant) knew she was about to leave the train in time to prevent her being injured in the attempt to do so, and negligently failed to take steps to prevent such injury; and that the mere pulling of the conductor's signal bell-cord, or what was supposed by the plaintiff to be such bell-cord, by the plaintiff or some other passenger, without the knowledge or consent of the conductor, would not be such notice of plaintiff's purpose to leave the train, either to the conductor, or to any other servant of the defendant on said train."

5. "The defendant had the right, and it was its duty, to make and enforce all reasonable and proper rules and regulation for the safe running of its trains and the safe transportation of its passengers; and if the jury believe from the evidence that one of these rules and regulations forbade passengers to pull the conductor's signal bell-cord, and that this was a reasonable and proper regulation, and that the defendant and its servants had exercised reasonable and proper diligence to bring it to the knowledge of the public, and of passengers on its trains, including the plaintiff; and if the jury believe from the evidence that the plaintiff might, by reasonable care, have known said regulations, either from the notices printed on the schedules, or from the placards posted up in the car in which she was travelling; and that plaintiff, without the knowledge, or consent of the conductor, violated this regulation, and usurped the functions of the conductor, by pulling what she supposed was the conductor's signal bell-cord; or, if she, in conjunction and agreement

with Mrs. Cobb, or any other person, pulled said bell-cord, in the attempt to stop the train at a point where it was by law forbidden to stop for the purpose of receiving or delivering passengers, or for any purpose except to prevent accidents, or in case of necessity; and that the plaintiff then attempted to leave said train, where it was by law forbidden to stop to receive or discharge passengers, and in such attempt was hurt as alleged in the complaint,—then they must find for the defendant."

7. "If the jury believe from the evidence that while the plaintiff was being carried as a passenger on the defendant's train going westward on First avenue, and approaching the east side of Twentieth street, pulled the conductor's bell-cord, without his knowledge or consent, in response to which the engineer stopped the train at a place where by the laws of the city he was forbidden to stop for discharging or receiving passengers; and that plaintiff was injured while attempting to get off the train, by the engineer's starting it again according to the requirements of the laws of the city, without knowledge or notice of plaintiff's purpose or attempt to get off there, and without any orders from the conductor to start again; then the injuries received by plaintiff were the result of her own act, and she can not recover anything in this action."

8. "If the jury believe from the evidence that the damage of which the plaintiff complains was received on the east side of Twentieth street in the city of Birmingham, then, under the allegations of the complaint, the jury must find for the defendant."

The charges given, and the refusal of the several charges asked, are here assigned as error.

GARRETT & UNDERWOOD, for appellant.

A. Y. HARPER, and R. G. COBB, contra.

SOMERVILLE, J.—The action is brought for an injury received by the plaintiff in stepping from the train of the defendant's street railroad, which was operated by a steam dummy-engine in the city of Birmingham. The verdict of the jury was for the plaintiff, in the sum of five thousand dollars damages. The alleged negligence of the defendant, as averred in the complaint, was the failure of the engineer of the train to stop a sufficient length of time to enable the

plaintiff to safely alight on the *west* side of Twentieth street, where trains were accustomed to stop to deliver passengers.

1. The defendant, in the eighth charge, requested the court to instruct the jury that, if they believed from the evidence that the damage complained of was received on the *east* side of said street, then, under the allegations of the complaint, the jury must find for the defendant—in other words, that there would be a fatal *variance* between the allegations and the proof.

We think, under the facts of the case, the place of stopping was material, and that the court erred in not giving the charge. It was shown by the evidence that a municipal ordinance of the city, regulating the running and stopping of street cars, required each stop to be made just beyond the far crossing from the car, or dummy-engine, "so as to clear the street or avenue from the side-walk," and prohibited a violation of this regulation under a penalty as a misdemeanor. The ordinance thus prohibited trains to stop on the east side of streets when moving westward, or on the west side when moving eastward, either to receive or deliver passengers. They were required to cross the street before coming to a stop. And the evidence shows this was the custom of the company, except, in cases of necessity, to avoid accident, or collision with vehicles, or pedestrians.

The train, in this case, was moving westward at the time of the accident. The lawful stopping place, therefore, was on the *west* side of Twentieth street. It was unlawful to stop on the east side for the purpose of allowing a passenger to alight.

The contract of the defendant with the plaintiff, as a passenger on its cars, must necessarily imply an agreement to stop on the west, and not on the east side. The duties, therefore, imposed by law on the defendant's servants, were materially different at the two places. At the lawful stopping-place they were compelled to stop to deliver the plaintiff, on receiving proper notice of her desire to stop, or show some lawful excuse for their failure to do so. This stop was required to be for a time reasonably sufficient to enable her to conveniently alight.—*Central R. R. Co. v. Miles*, 6 South. Rep. 696; 88 Ala. 256. And the duty of keeping a diligent look-out rested on the engineer and conductor, to see that a premature start of the train, such as might endanger her safety, should not be negligently made. No such duties were required at a place where it was unlawful to stop for the

purpose of delivering passengers, unless those in charge of the train elected to stop, in violation of law, and thereby induced the plaintiff to alight. In such case, on being informed of her presence and desire, they would presumptively be chargeable with negligence if they failed to stop for a time reasonably sufficient to permit a safe exit from the train.

The case of the *Western Railway of Ala. v. Sistrunk*, 85 Ala. 352, is distinguishable from this case, on the obvious ground, that the alleged variance of place there was immaterial, the duties of the defendant to the plaintiff being precisely identical at each.

For the error of refusing this charge, the judgment of the City Court must be reversed.

2. Contributory negligence is defensive matter, and the burden of establishing it is ordinarily cast on the defendant; but this is not a correct proposition, where the plaintiff's own testimony, which seeks to fix negligence on the defendant, inculpates himself also, as it tends to do in this case.—*S. & M. R. R. Co. v. Shearer*, 58 Ala. 672. Or, to state the proposition otherwise: "When the plaintiff shows negligence on part of the defendant, and there is nothing to imply that the plaintiff brought on the injury by his own negligence, then the burden of proof is on the defendant, to show that the plaintiff was guilty of negligence."—*Cassidy v. Angell*, 34 Amer. Rep. 690; Whart. on Negl. §§ 423, 425. The third charge requested by the plaintiff should not have been given.

3. So, the second charge would have been less liable to mislead, if it had asserted that contributory negligence can not be invoked as a defense, unless it is *a* proximate cause, instead of *the* proximate cause of the injury. It need not be the *sole* cause, but it is sufficient if it be one of two or more concurring efficient causes.—*Sistrunk's Case*, 85 Ala. 352, *supra*.

4. The fourth charge given for the plaintiff was also erroneous. Whether the train stopped on the west or the east side of the street was a material issue on the trial, and it should have been determined by the jury on the evidence, without reference to any presumption supposed to arise from duty to stop on the west side, which was imposed by the city ordinance.

5. There was some evidence from which the jury, in our judgment, were authorized to infer that the stoppage was on the west side of the street, and the objection to the fifth

charge requested by plaintiff, based on this ground, is not tenable. If this instruction had limited the amount of recovery to that claimed in the complaint, we see no error.

6. The question of the plaintiff's alleged contributory negligence was properly left to the jury as a question of fact. We would not, under the evidence, be justified in deciding it adversely to her as a matter of law.—*L. & N. R. R. Co. v. Perry*, 87 Ala. 392, and cases cited. If the conductor was not in his place on the car, and the train stopped any where on the street in apparent response to the pulling of the bell-cord by the plaintiff, and she, believing reasonably that the stop was made for the purpose of allowing her to alight, attempted to do so, the question of her contributory negligence would be one of fact to be properly left to the jury. In this view, all of the defendant's charges, from the first to the fifth, inclusive, and also the seventh, were erroneous and properly refused. And the fifth charge was misleading, because it excluded the phase of the case last adverted to by us, involving the duties arising from a stoppage at another than lawful station, or place for the delivery of passengers.

7. The plaintiff, in our judgment, must be held to know the rule of stopping on the farther side of the street, as prescribed by the city ordinance. "It is well established, that the residents within a municipality must take notice of the ordinances, and it is frequently stated, that ordinances have the force and effect of laws within the limits of the corporation."—Municipal Police Ord., Horr. & Bemis, 158. This principle seems sound, when applied to any person within a municipality, who contracts, even by implication, with reference to such ordinances, when operative as police regulations. The contract here, as we have seen, by necessary intendment was, that the delivery of the plaintiff as a passenger was to be at a regular stopping-place, such as would not be violative of any existing and lawful police regulation. This devolved on her the responsibility of informing herself of what we may pronounce an every-day incident of street-railway travel.—*Mitchell v. Chicago Railway Co.*, 51 Mich. 236.

The foregoing view is not inconsistent with the principle settled in this State, but denied in many other jurisdictions, that courts will not take judicial notice of municipal by-laws, but require them to be proved as facts.—*Case v. Mayor of Mobile*, 30 Ala. 538; Munic. Pol. Ord. (Horr. & Bemis) 158. Nor with the rule, that such an ordinance will not be

[Dolan v. Dolan.]

permitted to create a civil right in favor of a third person, based on the negligence of one failing to obey it.—*Henry v. Sprague*, 23 Amer. Rep. 502; *Flynn v. The Canton Co.*, 17 Ib. 603; *Kirby v. Boylston Market Asso.*, 74 Amer. Dec. 682.

Reversed and remanded.