JACKSON, *Appellant*, v. THE GRAND AVENUE RAILWAY COMPANY.

Division Two, November 21, 1893.

1. **Municipality:** ORDINANCE: NOTICE.  Residents of a municipality must take notice of its ordinances.

2. **Negligence:** PASSENGER: STREET RAILROAD: EVIDENCE.  In an action against a street car company for injuries received by a passenger in alighting, by a sudden starting of the car, it is competent for the company to show that by an ordinance under which its cars were operated no car was permitted to stop for passengers at the intersection of streets, until it had reached the further side of the street crossed, and that when plaintiff undertook to get off, the car had only slackened its speed to await a signal from the flagman.

Jackson v. The Grand Ave. R'y Co.

3. ——: ——: ——: INSTRUCTION. The elimination by the court from an instruction asked by the plaintiff in said action of the words, that the conductor, "by the exercise of due care and diligence, might have known plaintiff desired to alight" is not improper where the conductor admits, and all the evidence shows, his actual knowledge of the fact.

4. Practice: EVIDENCE, OFFERING OUT OF TIME. It is within the trial court's discretion to exclude evidence constituting plaintiff's case in chief offered out of time.

5. ——: ——: EXPERT TESTIMONY. The necessity of an intelligent system of signals in moving a great number of cars over a street crossing is a matter which admits of expert testimony.

6. Negligence: STREET CAR: PASSENGER: ALIGHTING FROM CAR. Where a street car is stopped for a signal from a flagman before it passes over a crossing and a passenger is about to alight, with the knowledge of the conductor, it is the latter's duty to give the passenger a reasonable opportunity to get off before starting the car.

7. ——: ——: ——. Street car companies are carriers of passengers and must be held to the same degree of care and vigilance in preventing injury to them as is required of other railroads carrying passengers, that is, the utmost care and skill which prudent men would use and exercise in a like business and under like circumstances.

8. ——: ——: ——: ALIGHTING FROM CAR. In an action by a passenger against a street car company for injuries sustained by the sudden starting of the car when plaintiff was in the act of alighting, an instruction that "defendant owed to plaintiff the duty of exercising the utmost care and vigilance to permit her to alight in safety" is properly refused.

9. ——: ——: ——: ——. Where a passenger on a street car, about to alight at a place where the car has stopped to await a signal from a flagman before passing over a crossing, is told by the conductor not to get off, but she does so and is thrown down and injured, she cannot recover.

10. ——: ——: PASSENGER REGULATIONS: NOTICE. Where a street railway adopts and publishes reasonable regulations as to where its cars shall stop for leaving and taking on passengers, the latter are bound to take notice of such regulations.

*Appeal from Jackson Circuit Court.*—HON. JAMES
GIBSON, Judge.

AFFIRMED.

*C. V. Fyke* and *Fyke & Hamilton* for appellant.

(1) The court erred in permitting defendant to read in evidence section 848 of ordinance numbered 41982. *Railroad v. Mills*, 11 American and English Railroad Cases, 128. (2) The court also erred in permitting defendant to prove how crossings at Ninth and Walnut streets were usually made. *Ibid.* (3) The court erred in overruling plaintiff's objection to the following question: "I will ask you, Mr. Maywood, whether or not the safety of the people traveling that street, either on street cars or vehicles, requires that the cars should move forward on the signal of the flagman." The fact to be elicited, if material, was not a matter of expert evidence, and the question called for the opinion of the witness, and was inadmissible. *Koons v. Railroad*, 65 Mo. 592; *Brown v. Railroad*, 89 Mo. 152. (4) The court erred in refusing to permit plaintiff to prove in rebuttal by the witness, Pigeon, that the car came to a stop south of Ninth street, and also in striking out the answer of the witness to the question: "Do you know whether the conductor saw this woman when she was getting off the car?" *Lemon v. Chanslor*, 68 Mo. 340. (5) The court erred in refusing plaintiff's instruction numbered 3 as asked, and in modifying the same, and giving the same as modified. (6) The court erred in refusing plaintiff's instruction numbered 4. The defendant owed plaintiff, while a passenger, the utmost care and vigilance to permit her to alight in safety from the car. *Huetsenkump v. Railroad*, 37 Mo. 538; *Hipsley v. Railroad*, 88 Mo. 348; *Dougherty v. Railroad*, 97 Mo. 647; *Furnish v. Railroad*, 102 Mo. 438; *Railroad v. Higgs*, 34 American and English Railroad Cases, 529; *Railroad v. Derby*, 14 How. (U. S.) 468; *Smith v. Railroad*, 16 American and English Railroad Cases, 310; *Railroad*

*v. Twiname*, 30 American and English Railroad Cases, 616. (7) The court erred in refusing plaintiff's instructions, numbered 6 and 7.

*Karnes, Holmes & Krauthoff* for respondent.

(1) The rules governing horse cars are entirely inapplicable to the new and improved motors now in general use. *Hickman v. Railroad*, 47 Mo. App. 65. (2) The ordinance of the City of Kansas was properly admitted in evidence; plaintiff being an inhabitant of the city was bound by its ordinances, and also to take notice of them. 1 Dillon on Municipal Corporation [4 Ed.], secs. 355, 356; *Inhabitants v. Morton*, 25 Mo. 593; *Banking Co. v. Brunswick*, 87 Ga. 386; *Cummings v. Railroad*, 104 N. Y. 669; *Railroad v. Calderwood*, 89 Ala. 247. (3) The ordinance was admissible as a foundation for defendant's rule that its cars should, for the purpose of discharging passengers, stop only at the far crossing. If it appeared that plaintiff was injured while violating a rule of defendant, she cannot recover. A passenger must conform his actions to the reasonable rules and regulations of the carrier. Hutchinson on Carriers, sec. 587, *et seq.;* 1 Rorer on Railroads, p. 227; 2 Rorer on Railroads, p. 979, *et seq.;* 2 Harris on Damages by Corporations, pp. 656, 712, 713. "If the passenger would hold the carrier to the full measure of his responsibility for safe carriage, he must conform to all the reasonable rules the carrier makes." Beach on Contributory Negligence [2 Ed.], sec. 151. (4) There was no error in the admission of the evidence of Mr. Maywood in answer to the question whether or not the safety of people traveling the street at the locality of the accident required that the cars should move on the signal of the flagman. Even if error, it is not such as to cause a reversal of the judgment. *Fisher v. Railroad*, 22 Ore. 533; *Symms v.*

*Bank*, 48 Kan. 713; *Julian v. Calkins*, 85 Mo. 202; *Redmon v. Piersol*, 39 Mo. App. 173. (5) The complaint of the exclusion of the evidence of the witness, Pigeon, in rebuttal, is without merit. *Christal v. Craig*, 80 Mo. 367; *State v. Pratt*, 98 Mo. 482; *Ashley v. Greene*, 40 Mo. App. 288. (6) The fourth instruction asked by the plaintiff was properly refused. It sought to announce the doctrine that defendant, as a common carrier, "owed to plaintiff the duty of exercising the utmost care and prudence." *Smith v. Railroad*, 108 Mo. 243; *Spohn v. Railroad*, 101 Mo. 417; *Wilmott v. Railroad*, 106 Mo. 535; *Gilson v. Railroad*, 76 Mo. 282. (7) Defendant's third instruction stated the law correctly. It was not to be anticipated that a passenger would get off the car where he had no business to do so. *Railroad v. Green*, 81 Ill. 19. (8) Defendant's fifth instruction was properly given. *Sinex v. Railroad*, L. R. 3 Exch. 150; *Kitchen v. Railroad*, 69 Mo. 265; *Roan v. Winn*, 93 Mo. 503. (9) On the whole evidence the verdict is the only one that could have been rendered and is in consonance with justice.

GANTT, P. J.—The appellant, a married woman, fifty-two years old, brought this action against the defendant, a street car company, operating a cable railway upon Walnut, Fifteenth and other streets, in Kansas City, {Missouri, for damages, resulting from a fall from one of its cars, and caused as she alleges by the sudden and negligent starting of the car, just as she was alighting on Walnut street, near Ninth street. The injury occurred September 24, 1889. There was a verdict for defendant in the circuit court.

The answer was: *First.* A general denial. *Second.* That plaintiff so negligently and carelessly conducted herself in alighting from said street car, that the accident and injury were occasioned thereby wholly or in

part, and but for said negligence and carelessness of the plaintiff said accident and injury would not have occurred. *Third.* That in and by section number 848 of an ordinance of the city of Kansas City, numbered 41982, approved May 12, 1888, entitled "Revised Ordinance of the City of Kansas," it is provided as follows:

"No car or the animals drawing the same shall be stopped on any street crossing. When the conductor or driver of any car is requested to stop at the intersection of streets to leave or receive passengers, he shall stop such car so as to leave the rear platform thereof slightly over the crossing."

"And defendant further states that at the time of said accident, and for a long time prior thereto, the defendant kept posted in said street cars a notice to the effect that pursuant to the city ordinance its cars would stop on further street crossings only. And this defendant further states that the street car, mentioned in the petition, did not stop on the south side of Ninth street for the purpose of permitting plaintiff to alight therefrom, and plaintiff had no right to suppose that said car would stop at said place for the purpose of permitting her to alight therefrom; and this plaintiff further states that the cars of this defendant are operated on Walnut street and run north and south, and that Ninth street is occupied by a cable street railway known as the 'Kansas City Cable Railway Company,' on which its cars are operated, running east and west, thus making a cable street railway crossing at said Ninth and Walnut streets. That a very large number of cars pass east and west on said Ninth street and north and south on said Walnut street at said place of crossing, besides a great many wagons, carriages and other vehicles, and that said place of crossing is one of great danger in the operation of street cars, and is so danger-

ous as to make it necessary to keep a flagman standing at said crossing for the purpose of signaling street cars and other vehicles when two cross the same, and for the purpose of preventing street cars and other vehicles from crossing said street at a dangerous time, and that it is absolutely necessary for safety of persons using said street and riding in the cars and other vehicles on said streets that the street cars should cross the same when signaled to do so, and that for the safety of such persons it is necessary that said street cars be not under the control of the conductor in crossing said point, but that the same be under the control of said flagman, as aforesaid; and that the car of the defendant company at the time of the accident complained of was undertaking to cross said Ninth street at the signal of the flagman standing there for that purpose, and when the plaintiff attempted to alight therefrom was in the act of being moved forward for the purpose of crossing said street, and would have stopped on the north side of said Ninth street with the rear platform slightly over the crossing for the purpose of permitting the plaintiff to alight therefrom and that she could have alighted therefrom, in perfect safety at said place. And this defendant states that said car either did not stop at the south side of Ninth street or after it did stop had already been put in motion when the plaintiff attempted to alight therefrom.

"Wherefore defendant states that plaintiff was guilty of contributory negligence in attempting to alight from said car at the time and in the manner that she did, and that the injury was occasioned thereby either wholly or a part."

The reply is as follows:

"Now comes the plaintiff in the above entitled case and denies each and every allegation in the amended answer of defendant contained."

On the day of the accident, the plaintiff, a negro woman, and her husband, boarded one of defendant's cars on Fifteenth street for the purpose of riding to Ninth and Walnut streets, and informed the conductor when they paid their fare that they desired to get off at Ninth street. At Ninth street, defendant's tracks, and cable cross the tracks and cable of the Kansas City Cable Railway Company, commonly called the Ninth street line. Both lines have double tracks. The defendant's tracks run north and south, and the Ninth street company's tracks run east and west. The crossing of each other's tracks at Ninth street, with so many cars, estimated in the brief, at one hundred and eighty in one hour, compelled the companies to keep a flagman on the crossing, whose signals should control the movement of the cars, across the tracks. As already said the cars on each of the roads are operated by endless cables, propelled from a powerhouse and running in a conduit beneath the surface of the street. A grip extends from the car through a slot in the center of the track and the car is propelled by applying the grip to the moving cable or rope. The cables are made of wire and are about one inch and one-half in thickness. At the street crossing in question, the cable rope of the Ninth street line is the upper one and the cable of the defendant is required to go under it. To accomplish a crossing it is necessary that the grip on the defendant's car should be released before the intersection is reached, otherwise the grip of defendant would collide with the cable rope of the Ninth street line and great damage ensue.

The two companies maintained a flagman here and posted him in the center of the crossing. The Ninth street cars coming from the west are compelled to climb a steep grade before reaching the crossing and are completely hidden from view from any point on

Walnut, north or south of the crossing by the large office buildings of Keith & Perry and Hall. When they leave the crossing they again climb another heavy grade to Grand Avenue, the next street east, so that it is apparent that a defective or broken grip might precipitate a Ninth street train upon defendant's cars crossing Ninth and Walnut, if especial care is not taken to warn the trainmen on each line of the approach of cars on the other. About sixty-five feet south of the south track of the Ninth street line, the north bound cars of defendant slow up, and if necessary come to a complete stop to await the flagman's signal. When the signal is given the car is moved about twenty or thirty feet with the grip applied to the cable to gather momentum sufficient to run it across the street, and just before entering upon the crossing, the grip is detached, or, as the motor men call it, they make a "let go" and by means of the motion already obtained, it crosses the street. The cable of defendant's road is deflected beneath the cable on the Ninth street line until it reached the north side of Ninth street, when it comes again to its proper level, and when the car reaches the north side the grip again attaches to the cable and the car proceeds.

By an ordinance of Kansas City it is provided: "No car, or the animals drawing the same, shall be stopped on any street crossing. When the conductor or driver of any car is required to stop at the intersection of streets to leave or receive passengers, he shall stop such car so as to leave the rear platform thereof slightly over the crossing."

There was evidence tending to show that defendant had posted in the car on which plaintiff was a passenger this notice: "In compliance with city ordinance number 848, revised, CARS WILL STOP AT FAR CROSSINGS ONLY," and no evidence to the contrary.

Jackson v. The Grand Ave. R'y Co.

The usual stopping place on defendant's line for receiving and discharging passengers is the far crossing; in this case, the north side of Ninth and Walnut streets.

The following diagram will illustrate the crossing:

"A"   "Let-go," thirty feet south of south track of Ninth street line.
"B"   Where car stops to acquire momentum before making crossing.
"C"   Point where plaintiff is said to have alighted from car, ninety feet south of Ninth street line.

Plaintiff says when the car of defendant reached the point marked "B," it came to a stop. She says she started to alight at "C," and while so doing the car suddenly started and she fell. Defendant contended that she undertook to leave the car at a point where she had no right to get off, and when defendant was not bound to anticipate that she would do so, and that at

the time she attempted to alight the car was in motion. The evidence of the plaintiff disclosed that this was the second or third ride she had ever taken on a cable car. It was an open or summer car. She says that when the car reached a point on Walnut just opposite the custom house or postoffice, it stopped. She saw other people getting off of the car and her husband said, "Let us get off here," and started and she followed. Her husband got off safely, but just as she was stepping off the car step, the car started suddenly. She found she was falling, and turned and tried to catch, but couldn't, and fell on her back, with her head to the north. She denied that the conductor or anybody else tried to hold her on the car. She says no one touched her at all. The conductor gave her no notice that the car was going to start. She did not know that it was going to start so suddenly or she would not have attempted to get off.

Two physicians, Drs. Eggers and Hannawalt, testified her injuries would be permanent. Her injuries consisted of strains and bruises on her spine.

The defendant read in evidence the ordinance forbidding street cars to stop on the crossings, and when passengers desired to stop at intersections, the cars must stop with the rear platform slightly over the opposite crossing or far side. Maywood, the conductor, testified that he thought the notice to stop at far street crossings was posted in that car. His testimony is substantially as follows:

"When plaintiff and her husband got on the car, *they told me they wanted to get off at Ninth street;* before we got quite to Ninth street I gave the gripman my bell to stop at Ninth street. Upon my signal he stopped on the north side of Ninth street. On this occasion the car did not come to a stop south of Ninth street, *it just slacked up, it didn't really come to a stop.* Just after the flagman gave the gripman the signal to come ahead,

I saw the lady and said: 'Lady, wait, I will let you off at the crossing;' she broke right by me and stepped off. I endeavored to catch her but couldn't do it; the car was already in motion at that time. I didn't notice the old gentleman get off; I couldn't say where he got off; I didn't see him get off at all. When I told the plaintiff not to get off she was on the platform. Instead of her stopping when I asked her to, she went ahead, broke right by me, and stepped off on the southwest corner of the step; first she set down, then fell head north. I jumped off the car and went back to her."

On cross-examination he testified: "My recollection is clear about that transaction; it was on the twenty-fourth of September, 1889. I made a memorandum of it. I make a memorandum of everything I do every day. I make a minute of everything. I can't say how many people were on the car that day. I can't say how many persons got off when we stopped south of Ninth street; my attention was drawn back to the lady at that time. When we stopped south of ninth street, I was standing on the rear platform. When Mr. and Mrs. Jackson got up out of their seats I think my attention was called to something else at that time; I don't remember of seeing them get up. I don't remember of seeing Mr. Jackson before he got off on the ground; the car couldn't have been still when he got off; it hadn't made a stop. *I don't know when the flagman gave the signal to come ahead.* My proper position on the car between Ninth and Tenth streets is on the rear platform. There was no gate on either side of the platform to prevent people from getting off; the car is what is called a summer car. In order to get the car to stop we ring the bell once. There is a bell rope for the use of the conductor; the signal to the gripman to stop or start the car is one bell to stop, two bells to start. It takes no length of time at all to give the sig-

nal; all we have to do is to jerk the rope. The cars on Walnut street sometimes come to a stop south of Ninth street there. There is no definite length of time to stand there. Sometimes they stand longer; sometimes they don't stop at all. I took hold of the lady to stop her from getting off. I grabbed for her to take hold of her, but couldn't do it; it was all done in an instant. I was not in the act of assisting her to alight when the car started; I was in the act of trying to hold her on. I saw her just when she was stepping off. On the street car line at the crossing of Fifteenth and Campbell, on account of a curve, the car stops for the purpose of taking on and letting off passengers before it crosses the street; there is no cable crossing there. We are not not governed by this notice at Fifteenth and Campbell streets about stopping at the far crossing. When we stop south of Ninth street waiting for a signal, we stop back a little ways; there is no regular distance to stop. We can get momentum enough in three feet to make the crossing. The gripman usually stops and starts the car upon the signal of the conductor. Any other place than the let go the conductor has full control of the car."

The conductor was corroborated by D. B. Riggins, the conductor on a car going south, which passed at the time of the accident. He testified the car was in motion as Mrs. Jackson attempted to step off and that Maywood seemed to be trying to catch her. He is also corroborated by W. H. Roll and F. M. Deering, who were in no way connected with the defendant. They both say the car was in motion when she fell and that the conductor seemed to have hold of her trying to catch her.

After defendant closed, plaintiff called one J. Pigeon as a witness and asked him whether the car came to a stop, thereupon counsel for defendent made the objec-

tion that it was not rebuttal and the witness was in court before the plaintiff closed in chief. The court sustained the objection, and plaintiff excepted.

At the instance of the plaintiff the court gave the following instructions:

"1. Although you may believe from the evidence that it was necessary to have a flagman at Ninth and Walnut streets and that a flagman was so kept to notify or signal for cars to cross or to stop, still, if you find from the evidence that the car stopped south of Ninth street and while it was so stopped plaintiff started to alight from said car and the conductor saw her attempting to alight while said car was stopped, it was his duty to cause said car to remain standing until plaintiff had a reasonable time to alight, notwithstanding the flagman may have signaled for the car to cross.

"2. If you find for the plaintiff you will assess her damages at such sum as you may believe from the evidence will compensate her for her injuries, if any, and her physical pain and suffering, if any, caused by said accident."

And refused the following instruction as asked.

"3. The court instructs the jury that it was the duty of the defendant, as a common carrier of passengers in Kansas City for hire, when it stopped its car, whether in consequence of cars being on Ninth street or from any other reason not to start the same again while the plaintiff was in the act of getting off the car, if the fact that plaintiff was in the act of alighting was known to the person having charge of the same or could have been known to such person by the exercise of due care and caution in the discharge of his duties; and as a common carrier of passengers it was defendant's duty to give plaintiff a reasonable opportunity to alight from its car before starting the same, if the fact that plaintiff desired to alight was known or by the exer-

cise of due care and diligence might have been known to the person in charge of the car; and if the jury believe from the evidence that on the twenty-fifth day of September, 1889, the plaintiff was a passenger upon one of the street cars of the defendant, operated by it on Walnut street within the city of Kansas City, and while such car of defendant, in which plaintiff and others were being conveyed as passengers was passing along Walnut street south of Ninth street it had stopped for any purpose and when so stopped the plaintiff was in the act of getting off said car, with the knowledge of the conductor of said car, and *while in the exercise of due diligence on her part,* and the said car was started while plaintiff was so getting off and before she had a reasonable time to do so, and she was thereby thrown down upon the street and was injured, the defendant is liable for the damages sustained by plaintiff and the verdict should be for plaintiff."

But modified it by striking out the words "or could have been known to such person by the exercise of due care and caution in the discharge of his duties," and the words "or by the exercise of due care and diligence might have been known," to which defendant duly excepted, and gave it in this form:

"3 (as modified). The court instructs the jury that it was the duty of the defendant, as a common carrier of passengers in Kansas City, for hire, when it stopped its car, whether in consequence of cars being on Ninth street or from any other reason, not to start the same again while the plaintiff was in the act of getting off the car, if the fact that plaintiff was in the act of alighting was known to the conductor having charge of the same; and as a common carrier of passengers, it was defendant's duty to give plaintiff a reasonable opportunity to alight from its car before starting the same, if the fact that plaintiff desired to alight was known to

the conductor in charge of the car; and if the jury believe from the evidence that, on the twenty-fifth day of September, 1889, the plaintiff was a passenger upon one of the street cars of the defendant operated by it on on Walnut street in the city of Kansas City, and while such car of defendant, in which plaintiff and others were being conveyed as passengers, was passing along Walnut street, south of Ninth street it had stopped for any purpose, and when so stopped the plaintiff was in the act of getting off said car, with the knowledge of the conductor of said car and while in the exercise of due diligence on her part, and that said car was started while plaintiff was so getting off, and before she had a reasonable time to do so, she was thereby thrown down upon the street and was injured, the defendant is liable for the damages thereby sustained by plaintiff and the verdict should be for the plaintiff.''

Thereupon the plaintiff asked and the court refused to give the following instructions:

"4. The court instructs the jury that if you believe from the evidence that plaintiff was, at the time of the event in question, a passenger on one of defendant's cars, the defendant owed to plaintiff the duty of exercising the utmost care and vigilance to permit her to alight in safety from said car, and is responsible to the plaintiff for any negligence or want of proper care, which the jury may find from the evidence, if they so find, which caused the injury in question arising from starting the car, before plaintiff had reasonable time to alight therefrom, if the jury so find.

"5. The court instructs the jury that if you find from the evidence that defendant's car stopped on Walnut street before crossing Ninth street, and while the same was so stopped plaintiff started to get off said car, and the person or persons in charge of said car knew, or by the exercise of ordinary care and caution

might have known, that she was in the act of alighting from said car and prevented said car from being started while plaintiff was in the act of stepping from said car, and permitted said car to be started before plaintiff had reasonable time to alight therefrom, and that plaintiff, by reason of said car being started while she was stepping therefrom, was thrown down and injured, you will find for the plaintiff."

"6. If you find from the evidence that defendant's car was stopped on Walnut street, just before crossing Ninth street, and plaintiff, with the knowledge of the conductor in charge of said car, started to alight from said car, it was the duty of said conductor to have caused said car to remain standing still until plaintiff had reasonably sufficient time to alight, and if said car was started while plaintiff was so in the act of alighting, and she was thereby injured, defendant was guilty of negligence, and you will find for plaintiff.

"7. The court instructs the jury, that if you find from the evidence that, while the car was stopped at Ninth and Walnut streets, Kansas City, Missouri, before it crossed Ninth street, not for the purpose of letting off and taking in passengers, but for some other reason, still, if you find from the evidence that the conductor of said car, allowed the car to be started, while plaintiff was attempting to alight from said car, knowing that she was so alighting, and she was injured in such attempt, you will find for the plaintiff, if you believe she was thereby injured."

To the action of the court in refusing to give said instructions, and each of them, to the jury, the plaintiff then and there at the time duly excepted.

The court gave to the jury the following instructions, for defendant.

"1. The court instructs the jury, that if it was necessary, to avoid collisions between defendant's

cars and those on the Ninth street line, then the defendant had the right to adopt the regulation that the cars of defendant, when stopped before reaching Ninth street, should go forward on the signal of the watchman to the gripman, without any bell from the conductor; provided, that you believe in carrying out this regulation the defendant gave such notice as was reasonably possible under the circumstances to the passengers that they should only alight on the further crossing.

"2. If the plaintiff undertook to alight from defendant's car while it was moving, then defendant could not have been guilty of any negligence as charged, and your verdict must be for defendant.

"3. Although the jury may believe from the evidence that the plaintiff informed the conductor that she wanted to get off at Ninth street, and although the car stopped before reaching Ninth street, yet if the jury believe that such stop was not made for passengers to alight, but for the gripman to await the signal from the watchman to cross Ninth street, and if the plaintiff was told not to get off at that place, but she did get off and in so doing was thrown down and injured, then she cannot recover in this action and your verdict will be for the defendant.

"4. The court instructs the jury, that if the plaintiff alighted from said car while the same was in motion, and going at such rate of speed that a person of ordinary care and prudence would not have alighted under the circumstances, then she was guilty of contributory negligence and cannot recover in this cause, whether the defendant was negligent or not; and if you find from the evidence that she did so alight, then your verdict will be for the defendant.

"5. The court instructs the jury, that by the ordinance read in evidence, when street cars are required

to stop at the intersection of streets to allow passengers to alight, the cars are required to run past the further side of the street and stop so as to leave the rear platform of said car slightly over the further crossing, and that plaintiff was chargeable with notice of said ordinance; and if it appear from the evidence that, owing to the great number of vehicles, street cars and passengers habitually crossing Ninth and Walnut streets in different directions, said street crossing was a dangerous one, so that for safety of persons using said Ninth and Walnut streets and the street cars and other vehicles traversing the same it was reasonably necessary that flagmen should be kept stationed at said crossing to notify the gripmen when to move the cars forward, instead of the conductor's signal, in crossing said Ninth street, and that flagmen were so kept, and that car was moved across said Ninth street on the signal of said flagman, then plaintiff had no right to assume that said car had stopped and would remain standing near the south side of said Ninth street for the purpose of permitting her to alight, but she was chargeable with knowledge of the said danger and manner of controlling the movement of said cars. And if you believe from the evidence that plaintiff, negligently, under all the instructions, attempted to alight from said car before it had crossed said Ninth street to the north side thereof, your verdict must be for the defendant. And plaintiff was guilty of negligence if she attempted to alight from said car at a time and under circumstances when a person of ordinary prudence would not have done so.

"6. The court instructs the jury, that if they believe from the evidence that it was reasonably prudent for the safety of the traveling public that the defendant should stop or slow down its cars before reaching Ninth street and await the signal of the

watchman, then it became the duty of the defendant to make such stop or slow down, and passengers riding on defendant's cars must take the responsibility of informing themselves of the methods so to be observed in operating defendant's road at that point, and plaintiff had no right to undertake to alight at that point and, if she did so, it was at her own risk and she cannot recover, unless the jury shall further find from the evidence that the car had come to a full stop and that said car was started up again while plaintiff was alighting therefrom, with actual knowledge of the conductor that she was so alighting at the time.

"7. The jury are further instructed, that, even if you believe from the evidence that the car from which plaintiff was alighting had come to a full stop and was then started up, it is not enough for you to believe from the evidence that the conductor might have known plaintiff was alighting, but it is necessary for you to find from the evidence that the conductor had actual knowledge of that fact."

To the action of the court in giving said instructions, and each of them, so asked by the defendant and given to the jury, the plaintiff then and there at the time duly excepted.

I. It was not error to admit in evidence section 848 of ordinance number 41982 of Kansas City. The defendant was operating its road under a franchise from the city and was bound to observe the ordinances, and plaintiff was an inhabitant of the city and must be held to know that the ordinance forbade the defendant to stop its cars on the crossing, but required that they should be stopped on the farther side of the street in the direction they were moving. "It is well established that the residents within a municipality must take notice of the ordinances, and it is frequently stated that ordinances have the force and effect of laws

within the limits of the corporation." Horr and Bemis Municipal Pol. Ord., sec. 184; *Railroad v. Calderwood*, 89 Ala. 247; *Mitchell v. Railroad*, 51 Mich. 236.

This view it was said, in *Railroad v. Calderwood*, 89 Ala., *supra*, was not inconsistent with the rule of law that courts will not take judical notice of municipal laws, but require them to be proved as facts.

In *Railroad v. Railroad*, 87 Ga. 386, the supreme court of Georgia, says: "Valid ordinances ordained by the mayor and council of a city are binding upon all persons who come within the scope of their operation, and no reason occurs to us why railroads and their employees should not be thus bound."

The ordinance was admissible as the foundation of the rule adopted by the defendant that its cars should only stop at the far crossing to let off passengers for that crossing. The rule was in obedience to, and in harmony with, the ordinance. Moreover, it was admissible in connection with the testimony of plaintiff and the conductor that she notified him when she got on the car and paid her fare that she wanted to get off at Ninth street. In the absence of any subsequent notification of a change in her intention or desire to get off before reaching Ninth street, he might well presume she would wait till the car reached the place, fixed by the ordinance for its stopping at that junction. And it was also competent in connection with his evidence that the car did not stop, but merely slacked its speed while approaching the crossing. Defendant might fairly argue that as the ordinance required the car to go to the farther side of the street, any stop on the south side would naturally be only momentary, and to get the signal, and *not* to let off passengers, as was testified by the conductor. We can see no impropriety in this evidence; we think it was proper to put all the circumstances before the jury. While it is true

the plaintiff testified to a complete stop, the conductor denied it. If the train did not stop, and the court could not assume either that it did or did not, it was a fair inference that defendant and its servants were endeavoring to obey the ordinance and the rule, and it was due to the defendant to allow it to show the jury that it was acting under municipal direction, and not governed by any arbitrary rule of its own making.

Nor was there any error in permitting the defendant to prove how these crossings are made, as the evidence tended to show how important it was to the safety of its passengers to use every precaution at a crossing like this to avoid collisions with the cars of the other line. The admission of this evidence was to sustain defendant's case, and the fact that the plaintiff testified to a full stop did not deprive defendant of the right to show, if it could, that the car did *not* stop and why. The question was one of competency, not the weight of the evidence. The place for stopping the cars, as directed by the ordinance and the rule, commends itself to the good sense of every one.

There is nothing harsh or unreasonable in requiring that those who travel in the cars and vehicles of public carriers should acquaint themselves with those rules adopted by the carrier for the better service of the public, and insuring the safety of its passengers. This we regard as too plain for discussion, but it is supported by many authorities. *Railroad v. Hirst,* 30 Fla. 1; *Dodge v. Steamship Co.,* 148 Mass. 207; *Sira v. Railroad,* 115 Mo. 127; *Alcorn v. Railroad,* 108 Mo. 81–93. The plaintiff having notified the conductor she desired to alight at Ninth street; the ordinance having required him to go to the opposite side; the conductor having given the signal to the gripman to go on to Ninth, it was the duty of the plaintiff to remain on the car till the far side of Ninth was reached, and the conductor

was not bound to anticipate she would attempt to leave
the car before reaching that point, in the absence of a
request to the contrary from her; or that she would try
to alight while the car was in motion.   Nor would a
mere momentary stop to take the signal or make the
"let-go" be an *invitation* to get off in the absence of
evidence that defendant had established a custom or
practice of stopping at that point to let off passengers.

The case of *Railroad v. Mills*, 105 Ill. 63, relied
upon by counsel for appellant, is not similar in the facts
upon which it was based, in this particular, to the case
at bar.  There Judge Scholfield says: "The car
being stopped, from whatever cause, *at a place where
passengers were in the habit of alighting*, she had the
undoubted right to alight without making any request,
*   *   * and if the defendant's servants knew, or
by the exercise of due care would have known, of it, it
was negligence on their part to start the car before she
had a reasonable time in which to alight."  With the
rule there announced we fully agree, but here the evi-
dence shows no such habit by the passengers, as to put
the servants in charge of this car upon notice of her
desire to get off at the place she was hurt.

II. In this connection it is proper to remark that
the court committed no error in modifying plaintiff's
third instruction by striking out the words, "by the
exercise of due care and diligence might have known
plaintiff desired to alight," for the simple reason that
in this case all the evidence shows the conductor act-
ually saw plaintiff.  There was no occasion to use the
formulas, "might have been" or "might have known,"
when the conductor confessed to actual knowledge.
It is unnecessary to say more than that instructions
should not be given without some evidence to support
them.

III. It was a matter largely in the discretion of

the trial court to refuse to let the witness Pigeon answer. The matter sought to be elicited constituted a part of plaintiff's case in chief, and no circumstances of unavoidable absence, or subsequent discovery of the witness, were shown to justify the failure to offer him as part of plaintiff's case in chief; and we do not feel called upon to interfere with the discretion of the circuit court. *State v. Smith*, 80 Mo. 516; *Roach v. Colbern*, 76 Mo. 653.

IV. Error is also assigned in permitting the conductor, Maywood, to answer whether or not the safety of the people traveling that street either on street cars or vehicles, required that the cars should move forward on the signal of the flagman. The objection was that it was not a matter of expert evidence. No point is made that the witness by his experience and occupation was not qualified to express an opinion, but if we understand counsel his contention is that it was a fact within common knowledge.

In *Ardesco Oil Co. v. Gilson*, 63 Pa. St. 146, the court said: "An expert  *  *  *  is one having had experience. No clearly defined rule is to be found in the books as to what constitutes an expert. Much depends upon the nature of the question in regard to which an opinion is asked." Now, we do not think it can be said that it is a matter within the common experience how these crossings are made by cable roads. Indeed it was seriously doubted at one time whether it was feasible for one cable road to cross another, but it was mastered; but it cannot, we think, be said that the great mass of those who travel on these cars in our large cities know or trouble themselves much as to how these cables are managed or that they have much conception of the number of cars that hourly cross an intersection like this in question, or of the dangers that might attend a failure to have a

a common flagman to signal each train or that danger would ensue from a disregard of his signals. We think it was a subject upon which the jury might well have been informed and enlightened by the evidence of one whose experience had taught him the necessity of an intelligent system of signals in moving so great a number of cars across a given point in a large city.

V. The court instructs the jury, for the plaintiff, "that although they might believe from the evidence that it was necessary to have a flagman at this crossing and that he was kept there to notify or signal for cars to cross or stop, still if you find from the evidence that the car on which plaintiff was riding, stopped south of Ninth street, and while it was so stopped plaintiff started to alight from said car, and the conductor saw her attempting to alight while said car was stopped, it was his duty to cause said car to remain standing until plaintiff had a reasonable time to alight, notwithstanding the flagman may have signaled for the car to cross;" and the court in the third instruction for plaintiff as modified, instructed the jury that defendant as a common carrier of passengers, for hire, when it stopped its car, whether in consequence of cars being on Ninth street or from any other reason, not to start the same again while plaintiff was in the act of getting off the car, if the fact that plaintiff was in the act of alighting was known to the conductor having charge of the same, and it was defendant's duty to give plaintiff a reasonable opportunity to alight before starting said car, if the fact that plaintiff desired to alight was known to the conductor, and if while the car was so stopped, plaintiff was in the act of alighting with the knowledge of the conductor and she was exercising due care on her part and the train was suddenly started, before she had a reasonable time to get off and she was thrown upon the street and

injured, she was entitled to recover.

These two instructions fully and correctly declare the right of plaintiff to recover if the jury should find the facts upon which they are predicated in favor of plaintiff. These instructions did not impose upon defendant any obligation that conflicted in the least with its duty to the public and its passengers in crossing Ninth street. If as a matter of fact the car had come to a full stop sixty-five feet south of the Ninth street crossing and the passengers were alighting from it, with the knowledge of the conductor, certainly it would have been negligence for the servants of the company to have started the car suddenly forward, without warning to the passengers, or giving them an opportunity to alight, when they were in the very act of leaving the car, which was an open summer car, for in the very nature of such cars it would require but a moment to afford the opportunity of alighting. Street car companies are carriers of passengers, and must be held to the same degree of care and vigilance, in preventing injury to their passengers, as is demanded of other railways in carrying passengers, that is to say, the utmost care and skill which prudent men would use and exercise in a like business, and under similar circumstances. *Smith v. Railroad*, 108 Mo. 243; *O'Connell v. Railroad*, 106 Mo. 482; *Wilmott v. Railroad*, 106 Mo. 535; *Hurt v. Railroad*, 94 Mo. 255.

These instructions did not use the expressions as to the high degree of care to be used, but what was better, they told the jury in simple terms, what duty defendant owed to plaintiff at the time, and that was simply a reasonable opportunity to alight from the car in safety, exercising ordinary care on her part.

VI. There was no error in refusing plaintiff's third instruction as it was asked, because there was no question about the conductor seeing the plaintiff, and

having eliminated the clauses which assumed he might not have seen her, the court gave it, and as already said, as modified, it was a correct instruction as applied to the evidence.

VII.   No error was committed in refusing plaintiff's fourth instruction, for the reason that it was not sufficiently qualified, as was pointed out in *Dougherty v. Railroad*, 97 Mo. 647 and *Smith v. Railroad*, 108 Mo. 243, and hereinbefore indicated in the fifth paragraph of this opinion.

VIII.   The sixth and seventh instructions were rendered entirely unnecessary by the giving of the first and third instructions, for the plaintiff, as they contained everything that was essential in either, and for that reason if no other, were properly refused.

IX.   Counsel for appellant criticises the third instruction given for defendant, which in substance told the jury that if the car was stopped, but not to let passengers off, but merely for the gripman to await the signal of the watchman or flagman, and plaintiff was warned not to get off, *but in spite of the warning* attempted to alight, and was hurt, then defendant was not responsible for her injury.   The argument is that if the conductor saw her peril, he must avoid hurting her.   But it seems to us there is an inconsistency in plaintiff's position.   In her first instruction, she assumes that she must have been exercising ordinary care herself, in order to recover, but she complains of this instruction, because it exonerates defendant if, by her own recklessness, she left the car in spite of warning by the conductor, and in spite of his effort to restrain her. If the facts appeared as assumed by defendant, then plaintiff owed her injury to her own want of ordinary care and that was the proximate cause.   We think there was no error in the instruction under the evidence;

Vol. 118—15

*Huelsenkamp v. Railroad*, 37 Mo. 537; *Seymour v. Railroad*, 114 Mo. 266; *Wills v. Railroad*, 129 Mass. 351.

X. There was no error in defendant's fifth instruction. Plaintiff was chargeable with notice of the ordinance requiring defendant to stop its cars on the north side of Ninth street when moving in that direction. On the other hand, defendant was not chargeable with notice that this was the second or third trip plaintiff had ever made on a cable car. She was an adult of fifty-two years, and it was most natural to infer that she knew enough to wait until the crossing, at which she had desired to be put down, was reached, or that she would request the conductor to let her off, and if she did not understand the manner of receiving and discharging passengers, that she would inquire of the conductor.

Plaintiff complains that she was not chargeable with notice that the conductor had not the same control at this crossing as at all other points, but she is in no attitude to complain on this score, because she made no request whatever of the conductor to permit her to alight; she was not hurt by any invitation or act of his. On the contrary, the evidence seems to greatly preponderate to the effect that he warned her, and attempted to catch her, and failed. Moreover, the court instructed the jury in her first instruction, that if the car had actually stopped, and she was alighting, then it was the duty of the conductor to hold the train till she had reasonable time to alight, so that for the purposes of the case made by her evidence, the court did not relieve the conductor of his duty to permit her to alight safely. The instruction, however, was given to cover defendant's evidence, and as applied to that was correct, if the facts were as assumed therein.

XI. Defendant's sixth instruction is fully covered by the discussion of the others, and was correct. As

already said, it is both reasonable and proper that passengers should inform themselves of those common and reasonable regulations adopted by the carrier for their safety, and duly published, and that they should conform thereto.    *Sira v. Railroad,* 115 Mo. 127; *Alcorn v. Railroad,* 108 Mo. 81; *Railroad v. Gants,* 38 Kan. 608; *Dwinelle v. Railroad,* 120 N. Y. 117; *Mitchell v. Railroad,* 51 Mich. 236; *O'Neil v. Railroad,* 155 Mass. 371.

XII.    The two theories were fairly presented to the jury.  The plaintiff sought to recover on evidence tending to show the car stopped and was suddenly started as she was alighting.  The defendant endeavored to show that the car had not stopped at all to let off passengers; that it only slackened its speed to take the signal to cross Ninth street; that plaintiff in defiance of warning, stepped from the car while it was in motion. The great preponderance was in favor of defendant and the jury found for defendant, as it was their province to do.  The judgment is affirmed.    All concur.