SIRA, *Appellant,* v. THE WABASH RAILROAD COMPANY.

Division One, March 25, 1893.

1. **Railroad Stations**: TRAINS: PASSENGERS.   A railway company has the right, in the absence of statutory regulations, to determine for itself the trains which shall stop at particular stations, and the traveling public must accommodate itself to the regulations the company has adopted.

2. ———: ———: ———: ———.   Where the company undertakes to carry a passenger to a particular station, and the train on which she takes passage is one which, under the company's regulations, is required to receive and discharge passengers at such station, the company will commit an actionable wrong in requiring the passenger to leave the train before reaching her destination.

3. **Railroad**: PASSENGER: WRONGFUL EJECTION FROM TRAIN: PRIMA FACIE CASE.   In an action by the passenger against the company for compelling her to get off before reaching her destination on the ground that the train did not stop there, proof that it sometimes stopped at that station is sufficient to show a wrongful ejection and to place the burden on the company of showing that such stops were exceptional and under special instructions.

4. ———: ———: ———: EVIDENCE.   A statement by the conductor made shortly after he took up plaintiff's ticket that the train did not stop at her destination and that she would have to get off at another station, is a declaration by the company's agent in its interest and is not admissible as evidence of the fact stated.

5. ———: ———: ———: RAPE.   Though the conductor was guilty of a wrongful act in requiring plaintiff, a young woman sixteen or seventeen years of age, to get off the train before reaching her destination, a rape committed on her by a male passenger who also left the train at the station at which plaintiff was compelled to alight, and who decoyed her into a saloon under the pretense of conducting her to a hotel, is not the direct and immediate consequence of the conductor's wrongful act, where it appears that such station was not an inappropriate or unsafe place for a youthful and inexperienced female traveling alone to remain between trains.

6. ———: ———: ———: ———. The mere fact that such male passenger in the hearing of the conductor offered to conduct the plaintiff to the hotel is not sufficient to suggest to the conductor plaintiff's assault and ravishment so as to render the company liable therefor.

7. ———: ———: ———: ———: CONSPIRACY. The evidence in this case held, not sufficient to establish plaintiff's claim that while she was a passenger on defendant's train a conspiracy was formed between the male passenger, the conductor and the porter to place plaintiff in the male passenger's power to enable him to ravish her.

8. Railroad: CARRIER: PASSENGER: INJURIES FROM FELLOW PASSENGERS: DUTY OF CONDUCTOR. While it is the duty of the carrier to preserve order on trains and to protect its passengers, particularly females, from insults and assaults from their fellow passengers, and from annoyance and injuries of disorderly persons, yet to render the carrier liable in damages therefor it is necessary to bring home to the conductor knowledge or opportunity to know that the injury was threatened and to show that by his prompt intervention he could have prevented or mitigated it.

*Appeal from Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

AFFIRMED.

*John M. Barker* and *S. S. Nowlin* for appellant.

(1) The court erred in excluding proper and legal evidence offered by the plaintiff. The defendant is liable for the acts of its porter. *Williams v. Palace Car Co.*, 4 South. Rep. (La.) 85. The defendant and the trial judge tried this case on the theory that the plaintiff, the conductor and the train were all to be governed by certain rules of the defendant prohibiting the stopping of the train at Benton City. This was erroneous. *McGee v. Railroad*, 92 Mo. 208; *Marshall v. Railroad*, 78 Mo. 660; *Logan v. Railroad*, 77 Mo. 668; *Hicks v. Railroad*, 68 Mo. 329; 2 Wood's Railway Law, sec. 355, p. 1413; pp. 1044, 1045. (2) The court erred in sustaining the defendant's demurrer to plaintiff's evidence. It was one on the assumption that the defendant's rules forbade the train stopping at Benton

City, and that the injuries were too remote; the injuries in this case were the direct and proximate result of the acts of defendant in expelling the plaintiff from the train, in breaking its contract as a carrier of passengers. The conductor, the negro porter and Dusenberry wrongfully caused the plaintiff to leave the train and to be injured. *Spohn v. Railroad*, 101 Mo. 417; 92 Mo. 209; *Evans v. Railroad*, 11 Mo. App. 463; 21 Mo. App. 99; *Hurst v. Railroad*, 36 Miss. 660. The question of remoteness was for the jury. *Clements v. Railroad*, 53 Mo. 366; 11 Mo. App. 463; 21 Mo. App. 188. The possibility of an injury as a consequence of a wrong act is of sufficient proximation to make defendant liable. *Childers v. Yourie*, Tenn. Rep. (Meigs) 561; *Topeka v. Tuttle*, 5 Kan. 312; *Wellington v. Oil Co.*, 104 Mass. 64. The defendant is liable for Dusenberry's assault. *Squibb case*, 2 W. Black. 892; *Griggs v. Fleckenstein*, 19 Ga. 81; *Swelling v. McDonald*, 14 Allen (Mass.), 292; *Forncy v. Guldmacher*, 75 Mo. 113; *Bristal M. Co. v. Gridley*, 28 Conn. 201. The defendant put plaintiff out of the car, a child in a strange land, against the contract, in the dark, against her will, in the power and custody of a bad man, with suspicious circumstances, tending to criminate the porter, conductor and Dusenberry all together acting in concert; and "the nature of the act, the time and place when and where it was done, make it highly probable that some personal damage would immediately happen thereby." Under this condition of fact this court has held an injury as the proximate result of the defendant's act. 75 Mo. 113, approving the celebrated case of *Scott v. Shepperd*, 3 Wilson, 403. (3) Defendant was liable for putting plaintiff off at the wrong place without regard to any injury. *Railroad v. Milligan*, 50 Ind. 392; *McGinnis v. Railroad*, 21 Mo. App. 399; *Curtis v.*

*Railroad*, 12 Upper Can. 89; *Fixe v. Railroad*, 88 Ind. 381; 64 Miss. 80. (4) The carrier is the protector of each passenger against the malice and brutality of his fellow travelers (*Railroad v. Burke*, 53 Miss. 200; *Railroad v. Hinds*, 53 Pa. St. 512) and must use every power with which it is invested to transport the passenger safely to his destination. *Craker v. Railroad*, 36 Wis. 657, and cases cited; *Nieto v. Clark*, 1 Clifford 145; *Commonwealth v. Power*, 7 Met. 596. It was the respondent's duty by its conductor to protect appellant against likelihood of injury. *Stephens' case*, 29 Vt. 160; 53 Pa. St. 512. The defendant placed the plaintiff in her peril, and is answerable for it. *Stokes v. Saltonstall*, 13 Pet. 114; *Flint v. Norwich & N. Y. T. Co.*, 34 Conn. 554. The respondent is answerable for all injuries befalling the appellant after she was compelled to leave the train, while attempting to go to her destination.

*F. W. Lehmann* and *George S. Grover* for respondent.

(1) The conductor was not required to stop the train at Benton City, even though an agent of the defendant had directed the plaintiff to the train as one that would stop at that place. Woods' Railway Law, sec. 355; *Logan v. Railroad*, 77 Mo. 663; *Marshall v. Railroad*, 78 Mo. 610. (2) Even though plaintiff was induced to leave the train by the wrongful request or insistence of the conductor, that was not the proximate cause of the injuries complained of. Moak's Underhill on Torts, 16; Cooley on Torts, 73; Addison on Torts, 40; Wharton on Negligence, 138; *Phillips v. Dickerson*, 85 Ill. 11; *McClellan v. Railroad*, 94 Ind. 276; *Morrison v. Davis*, 20 Pa. St. 171; *McCleary v. Railroad*, 3 Neb. 44; *Bosch v. Railroad*, 44 Iowa, 402; *Brown v. Railroad*, 20 Mo. App. 222; *Francis v. Transfer Co.*, 5 Mo. App.

7; *Henry v. Railroad*, 76 Mo. 288; *Ashley v. Harrison*, 1 Esp. 49; *Railroad v. Staley*, 40 Ohio St. 118; *Limfin v. Lowry*, 34 N. W. Rep. (Minn.) 22; *Shurtleff v. Parker*, 130 Mass. 293; *Ward v. Weed*, 7 Bingh. 211; *Alexander v. Town of Carlisle*, 17 N. E. Rep. 200; *Barton v. Agricultural Society*, Albany Law Journal (Wis.), p. 371. (3) The suggestion of conspiracy between the trainmen and Dusenberry is entirely without support in the evidence. (4) The trainmen had no reasonable ground for apprehending that Dusenberry intended any harm to Miss Sira, and the defendant, therefore, is not liable as for an omission of duty because of their failure to warn or protect her against him. *Pillsbury v. Railroad*, 123 Ill. 9; Rorer on Railroads, 958; Thompson on Carriers, 29; Hutchinson on Carriers, 548–552; *Putnam v. Railroad*, 55 N. Y. 108; *Baxter v. Roberts*, 44 Cal. 187.

MACFARLANE, J.—The suit is for damages on account of the alleged wrongful expulsion of plaintiff from one of its trains by the employes of defendant.

The petition charges, in substance, that on the second of November, 1888, defendant sold plaintiff a coupon ticket, which entitled her to transportation from the state of Virginia to St. Louis, Missouri, and from St. Louis to Mexico, Missouri, over the road of defendant, but that her destination was Benton City, and defendant, when it sold her the ticket, agreed to let her off at her destination; that on the fourth of November, 1888, at the city of St. Louis, defendant further agreed, in consideration of the purchase of said ticket, to safely and with dispatch transport plaintiff on that night to said Benton City, and on the journey would protect her from harm; that defendant, however, did not keep said agreement, but after receiving plaintiff as a passenger, and before she reached her destina-

tion, by its servants and agents in charge of the train,. withdrew all protection from her, and wrongfully,. wantonly, knowingly, recklessly, etc., expelled her,. against her consent, from the train in the cold and .darkness, about midnight, at the town of Montgomery,. in a frightened condition, in the company of one Dick Dusenberry, a passenger on the same train, who, with the knowledge and consent of the defendant's servants,. took her into his custody, decoyed her to a saloon,. where he held her prisoner for five hours, and ravished her, by reason of which she was greatly injured in body and mind, suffering loss of time and expense, ruined her life and respectability, to her damage in the sum of $50,000.   The answer was a general denial.

The evidence showed that plaintiff was between sixteen and seventeen years of age, and on November, 1888, she purchased a ticket in Virginia for Mexico,. Missouri, intending to stop at Benton City; that she arrived in the St. Louis union depot on the evening of November 4th, and after waiting a short time, she· was placed upon a train of defendant company which ran through Benton City and Mexico; that after the train had started the conductor came through the car collecting tickets, and informed her that the train did not stop at Benton City, and she would have to get off at Montgomery and wait there for another train. Plaintiff objected, and insisted upon being let off at. Benton City, but the conductor refused.   During the journey, a man named Dusenberry took a seat beside· plaintiff and engaged in conversation with her.   When the train was about stopping at Montgomery, the conductor told plaintiff that was the place for her to get. off.   Dusenberry offered to see her safe to a hotel, to which the conductor assented.   Instead of taking her to a hotel, he took her to a saloon where he brutally abused and ravished her.   Upon plaintiff's evidence,.

the court directed a verdict for defendant, and judgment was entered accordingly, and plaintiff appealed.

In a consideration of the ruling of the court, the evidence will be given, so far as necessary, in detail.

Defendant had the undoubted right in the absence of statutory requirements to determine for itself what trains should stop at particular way stations, and the traveling public was bound to accommodate itself to such regulations as may have been adopted. Trains could not be safely or successfully run under the direction and management of the passengers. If then under the rules of defendant the train in question was not scheduled to stop at Benton City the conductor acted properly and within his duty in refusing to stop there for plaintiff, though she took that train under the direction of another agent of defendant who had authority to direct passengers. In such case, if damage results, it must be attributed to the misdirection. 2 Wood's Railway Law, sec. 355; *Logan v. Railroad*, 77 Mo. 664; *Marshall v. Railroad*, 78 Mo. 616.

Safety and convenience of passengers, as well as the business interests of the carrier require "the adoption and strict enforcement of reasonable regulations for the operation and management of trains. The public has the right to rely upon them," and, if defendant undertook to carry plaintiff to Benton City, and under the regulations it had adopted for the management of its passenger business, the train upon which she took passage was one which was required to receive and discharge passengers at that station, then under the foregoing authorities defendant committed an actionable wrong in requiring her to leave the train at Montgomery.

Defendant is charged with wrongfully ejecting plaintiff from its train at a station short of her destination. The question whether under the rules of defend-

ant this train could have been stopped at Benton City, therefore, became a vital one on the trial. Proof that the train always stopped at that station or that it habitually stopped there when it was the destination of a passenger on board would be sufficient proof of a rule requiring it to do so. That character of proof would be all to which a passenger could resort without calling upon the agents of defendant to furnish the evidence. The proof therefore made by plaintiff, that the train in question sometimes stopped at that station, was sufficient to make a *prima facie* case that under the regulations of defendant this train was required to stop there, and to put the burden on defendant to show that such stops were exceptional, and were made under special instructions from the company, if such was the case. It becomes unnecessary, therefore, to inquire whether the burden is not primarily upon the carrier to prove its regulations in regard to running its trains.

Plaintiff testified that the conductor soon after taking up her ticket informed her that the train did not stop at Benton City and for that reason she would have to get off at Montgomery. Defendant now insists that the conductor's statement respecting the schedule and running orders of his train was not drawn in question on the trial and should be accepted here as equivalent to an admission that the statement was correct.

The statement of the conductor was a mere declaration of an agent of defendant in its interest and was not admissible as evidence of the fact stated. While it was drawn out by plaintiff it was only done in giving all the conductor stated in his rufusal to stop the train. The persistency with which counsel for plaintiff insisted on the introduction of the evidence shows clearly that the truth of the declaration was not confessed.

While the evidence made a case of actionable wrong, whether the judgment should be reversed

depends upon the sufficiency of the proof of damage to justify a judgment therefor.   It will be observed in the first place that no damage was alleged in the petition except such as especially resulted from the outrage committed upon plaintiff by Dusenberry; and in the second place no other damage was proved.   The court allowed plaintiff the greatest latitude in the introduction of evidence in proof of damages.   She was per-, mitted to testify to the minutest details of what she suffered at the hands of Dusenberry, and of all facts which had a tendency to aggravate her damages; yet no word of testimony was given of any damage which she would have sustained had she not met with Dusenberry. The demurrer to the evidence was therefore properly sustained, unless the damage from Dusenberry was properly attributable to the acts of defendant's conductor in requiring plaintiff to leave the train at Montgomery.

The suit was really predicated upon the injury received at the hands of Dusenberry, after the plaintiff had left the train at Montgomery.   The trial court held in effect that plaintiff could not recover from defendant for such injuries.   Plaintiff insists that the court erred in this.

Plaintiff's counsel argues with great earnestness and cites numerous authorities to show the duty required of a carrier to preserve order on trains and to protect their passengers, particularly ladies, from insults and assaults from their fellow passengers and from annoyance and injuries from turbulent riotous and disorderly persons.   There can be no doubt of these duties and obligations, but to render the carrier liable for damages from such causes it would be necessary "in each case to bring home to the conductor knowledge or opportunity to know that the injury was threatened and to show that by his prompt intervention he could have pre-

vented or mitigated it." This qualification is required in the extreme cases cited by plaintiff. *Railroad v. Burke*, 53 Miss. 225; *Railroad v. Hinds*, 53 Pa. St. 512; *Nieto v. Clark*, 1 Clifford C. C. 149; *Craker v. Railroad*, 36 Wis. 671.

There was no evidence that the damages resulted in this case from requiring plaintiff to leave the train at an improper or dangerous place, as in case of *Evans v. Railroad*, 11 Mo. App. 471, and other similar cases cited by him in which the injuries were the natural consequences of the wrongful act.

There was no evidence which tended to prove that Montgomery City was an unsafe or inappropriate place for a youthful and inexperienced female traveling alone to remain between trains. Indeed it sufficiently appears from the evidence that two respectable hotels were in view of the station, one of them adjoining the platform at which the train stopped. It was shown that no such outrage had previously been perpetrated upon or insult even offered to a lady passenger in the thirty years the road had been operated through the town. There was then no negligence or misconduct on the part of the conductor in his selection of Montgomery as a proper station at which to leave plaintiff to await her train, and the contrary is not seriously urged.

The question then is reduced to the single one, whether the conductor or other train employe permitted Dusenberry to take plaintiff off the train, having at the time reason to believe that he intended to brutally assault her, or even to offer her indignities. The mere fact that Dusenberry offered to conduct plaintiff to a hotel afforded no ground upon which to create a suspicion that an assault and abuse was contemplated. We are not willing to concede that human nature is so depraved that the temporary association of a man and

woman, though strangers to each other, suggests the danger of assault and ravishment as a natural sequence.

But it is insisted by counsel that while plaintiff was a passenger on defendant's train a conspiracy was formed between Dusenberry, the conductor and train porter that plaintiff should be placed under the power and control of Dusenberry at Montgomery City in order that his evil and beastly lusts might be indulged.

We do not think the evidence warrants a suspicion of so foul a crime. The evidence shows, that, within forty minutes after the train started, the conductor informed plaintiff that the train did not stop at Benton City, and she would have to get off at Montgomery and wait for a train that did stop there. Up to this time, no communication was shown to have taken place between any of the supposed conspirators, or between Dusenberry and plaintiff. It is clear then that the information and direction given plaintiff by the conductor were not in furtherance of a previous conspiracy.

It does appear that after the train had been on its way some time, and after Dusenbury had been repulsed in his advances towards another lady, he took a seat beside plaintiff. In giving her evidence, she did not testify that his attentions on the train were objectionable or distasteful to her, or that they were such as to attract observation. In her evidence she first mentioned him when she spoke of leaving the train at Montgomery. She testified that when the train slowed up at Montgomery, the conductor said to her "here is your place where you will have to get off." Dusenberry said: "I board at the hotel where she will go, and I will see her safe to the hotel where I board," and the conductor said "all right." "So I got off and Dusenberry followed me and said: 'I will take you to the hotel where I board as I told the conductor.'"

Another witness, who was a passenger on the train, testified that when Dusenberry sat down deside plaintiff and began conversing with her, she seemed to be somewhat excited, and shrank away from him in the seat. Then he moved his seat behind witness, and pretty soon the negro porter came along, who stopped and talked to him a little bit, and Dusenberry gave him a half dollar, when the negro started out the back end of the car saying "this train does not stop at all stations." This witness testified that he saw Dusenberry and the conductor talking together twice as the train came up. His evidence further shows that these two conversations were in the presence of plaintiff. She said she was trying to persuade him to let her off at Benton. This is the evidence upon which counsel relies to establish a conspiracy.

There is no pretense that plaintiff or anyone else complained to the conductor of Dusenberry's action, or that anything was said or done by him indicating his evil intentions, more than the fact of intruding himself and his attentions upon her, and of this she made no complaint, either at the time or when testifying. If his conduct while on the train was suspicious, she did not notice it, or she would have declined his offer to take her to a hotel, and would have called upon the conductor for direction. We are able to see nothing in the evidence that indicated either a conspiracy to do evil to plaintiff, or that imposed upon the conductor the duty of special protection. The horrible injuries suffered by plaintiff at the hands of Dusenberry, and the resulting damage, were not the direct and immediate consequence of requiring her to leave the train at Montgomery. Judgment affirmed. All concur.