St. Louis, Iron Mountain & Southern Railway Company v. Wilson.

1. Appeal—Weight of Evidence.—On appeal the question is not whether the verdict is sustained by the weight of evidence, but whether there is evidence legally sufficient to sustain it. (Page 140.)

2. Carrier—Duty to Heat Waiting Room—Instruction.—In an action by a passenger against a railway company for failure to heat its waiting room, whereby plaintiff was injured, an instruction that the company would be liable if a passenger was injured by its failure to keep a fire in the waiting room when required by the weather was not prejudicial as making the company an insurer against the consequences of not having a fire, if the company's defense was that the waiting room was properly heated, and not that some unforeseen exigency prevented the making of a fire. (Page 140.)

3. False Imprisonment—Instruction.—In an action by a passenger against a carrier for false imprisonment, an instruction that "if plaintiff went to defendant's depot to take passage on defendant's train, and defendant's agent knowingly permitted the waiting room to be locked or knowingly permitted it to remain locked after being notified that it was locked, so that plaintiff was restrained from going in and out, your verdict will be for plaintiff," is not

prejudicial in failing to instruct the jury that they must further find that defendant's agent could, by the exercise of ordinary care, have prevented the depot from being locked, if the defense was not that defendant's agent · used ordinary care to prevent the waiting room from being locked, but that such agent had no knowledge of the occurrence.   (Page 141.)

4.  ABSTRACT INSTRUCTION—PREJUDICE.—An instruction that "it is the duty of a railroad company to protect all persons who are at its stations for the purpose of taking passage on its trains from annoyances, insults and abuse, and if defendant's agent used toward or about the plaintiff, or in plaintiff's hearing, any profane, obscene or boisterous language, which language insulted or injured plaintiff's feelings, your verdict should be for the plaintiff," ·is prejudicial where there was no evidence that plaintiff's agent used any language toward or about plaintiff or in her hearing that was calculated to or did insult her or injure her feelings. (Page 142.)

5.  DAMAGES—INSTRUCTIONS.—Instructions that if the jury find for the plaintiff, "her actual damages will be such sum of money as will be a just and fair compensation for all the pain and anguish, if any, both of body and mind, suffered by plaintiff on account of the injuries received," and that "if you find for the plaintiff, you may, in addition to actual damages, award punitive damages as a punishment for the defendant," are prejudicial where another instruction authorized the jury to find for plaintiff if defendant's agent used any insulting language to or about plaintiff, or in her hearing, if there was no sufficient proof that defendant's agent used such language.   (Page 143.)

6.  PUNITIVE DAMAGES—WHEN RECOVERABLE.—Punitive damages are not recoverable from a carrier on account of insulting language used by its servant toward a passenger unless the language was used in the line of his employment, and was willfully, wantonly, or maliciously insulting.   (Page 144.)

Appeal from Saline Circuit Court.

ALEXANDER M. DUFFIE, Judge.

Reversed.

### STATEMENT BY THE COURT.

Dilsia Wilson, a colored girl under 18 years of age, by her next friend, charged in her complaint that on the 29th day of December, 1898, about 9 o'clock a. m., she went to the depot at Benton, Arkansas, for the purpose of taking the train for Traskwood; that the weather was cold and disagreeable; that she went into the colored waiting room, and was compelled to remain in the cold,

without any fire, for about one hour, until the train arrived, in consequence whereof she was caused to have a chill, and was very sick during the remainder of that day, and during two weeks thereafter. The complaint further charged that, shortly after she went into the waiting room, defendant's servants wrongfully, willfully and knowingly imprisoned her therein by locking, or causing to be locked, the only door to the colored waiting room; wrongfully depriving her of her liberty, and preventing her from peaceable egress from said room. It further charged that she was grievously insulted and offended and affrightened by profane and abusive language, and vile and insulting signs, directed to her by persons who were outside and in the adjoining white people's waiting room; that, notwithstanding oft-repeated demands and entreaties to defendant's servants for protection and for a fire, defendant's servants willfully refused and neglected to unlock said door, to build a fire in the room, or to protect her from the insulting remarks, to her damage in the sum of $1,500.

The answer denied, explicitly and particularly, each of the charges made in the complaint.

The testimony on behalf of appellee tended to show that on the morning of December 29, 1898, she and two other negro girls and a negro man went to appellant's depot at Benton to take passage on one of its passenger trains. When they reached the depot, they found the colored waiting room locked, but upon request the door was opened, and they went in. There was no fire in the waiting room, and it was cold. They requested the agent several times to make a fire, or have one made. The agent cursed, and told the one making the request to "go on; the train would be there in five or ten minutes." They remained in the waiting room about an hour and a half or two hours before the train came. A short while after they went into the waiting room one Walter McMann, a white boy, locked the door, and they remained locked in until the train came. They told the agent several times that they wanted a fire made and the door unlocked. They told the agent as soon as the door was locked. He gave no heed to their request to have the door unlocked or to make a fire. The door was unlocked when the train came. While they remained in the waiting room, some "white fellows" came to the door, "licked out their tongues," "made faces at them," and were "swearing and cursing," calling them "damn bitches," and using "other words." They did not know whether Rainey, the agent, heard this cursing and swearing or not.

He was in his office, and they supposed he could have heard it had
he been listening. Appellee was a little negro girl. She got
"awful cold," as one witness expressed it, while she was in the
waiting room; and after she left the train at Traskwood she got
sick, and was sick about two weeks. She had not been sick before
she went to the depot at Benton. The testimony for appellant
tended to negative all the material facts which appellee's testimony
tended to prove.

The verdict was for $300 compensatory, and $200 punitive,
damages.

*Dodge & Johnson* and *J. E. Williams,* for appellant.

The court should have set aside the verdict as being against
the evidence. 47 Ark. 567; 57 Ark. 467; 37 Ark. 164; 57 Ark.
402; 20 Ark. 600. The duty of a railroad company to protect its
passengers against annoyances, insults and abuse is only a relative
one, and, in order to fix liability therefor upon the company, there
must be a showing of knowledge or opportunity of knowledge of
such facts and of negligence in failing to prevent or mitigate
them. 58 Am. & Eng. R. Cas., 538; 26 *id.* 252; 21 S. W. 905;
87 Mo. 74; 153 Pa. St. 213; 25 Atl. Rep. 1132; 58 Am. & Eng.
R. Cas. 91; 157 Pa. St. 103. No action lies for mere mental
anguish. 188 Mass. 185; 64 Ark. 538; 47 L. R. A. 324; 65 Ark.
182. The seventh instruction, as to punitive damages, is er-
roneous. 53 Ark. 7. Where the actual damage is merely nominal,
there can be no judgment for exemplary damages. 37 N. W. 118;
68 Me. 279; 70 Ill. 497; 71 Ill. 241; 30 Mich. 493; 50 Mich. 645;
51 S. W. 858; 34 S. W. 764; 21 Ohio, 98; 72 Ill. 542; 73 Ill. 187;
38 Kan. 578; 86 Tex. 679.

*Murphy & Mehaffy,* for appellees.

Where there is a conflict of testimony, the supreme court will
not reverse merely upon the question of the insufficiency of the
evidence. 57 Ark. 577; 23 Ark. 208; 23 Ark. 32; 13 Ark. 474;
*id.* 285; 46 Ark. 524; 47 Ark. 196; 50 Ark. 511; 23 Ark. 112;
*id.* 131. Independent of statute, it is the duty of railroad com-
panies to provide reasonable accommodations at passenger depots.
15 S. W. 43; 30 S. W. 720; 26 Ia. 138; 87 E. C. L. 410; 2 Wood,
Rys. 1338; 57 Tex. 157; Hutch. Carr., 516. Exemplary damages
are recoverable where the injury is wanton. 47 Mo. 90; 48 N. H.

92; 47 Ky. 430; 18 N. C. 440; 34 Pa. St. 48; 88 Am. Dec. 574; 22 Minn. 90; 35 Ark. 492; 59 Ark. 215; 42 Ark. 221.

Wood, J., (after stating the facts.) We will consider the questions in the order presented by appellant's counsel.

1.   It is contended that the cause should be reversed, because the jury failed to observe the rule of preponderance of the testimony. When the cause reaches this forum, it is no longer a question of preponderance, but only of the legal sufficiency, of the evidence to support the verdict. *St. Louis & S. F. R. Co.* v. *Kilpatrick,* 67 Ark. 47; *Catlett* v. *Railway Co.,* 57 Ark. 461.

2.   Appellant objects to the following instruction: "If plaintiff went to defendant's depot on the day mentioned in the complaint, to take passage on defendant's train, and at that time the weather was such as to require a fire in the waiting room to make it comfortable, it was defendant's duty to build and keep a fire in said waiting room; and, if it failed to do so, and plaintiff suffered in consequence of defendant's failure to build and keep such fire, your verdict will be for the plaintiff." It was the duty of railroads, independent of the statute of March 31, 1899, to provide reasonable accommodations for passengers at their stations. *McDonald* v. *Chicago & N. W. R. Co.,* 26 Ia. 138. This duty requires the exercise of ordinary care to see that station houses are provided with reasonable appointments for the safety and essential comfort of passengers, or those intending to become passengers, while they are waiting for trains. *Caterham Ry. Co.* v. *London, B. & S. C. Ry. Co.,* 87 E. C. L. 410; 1 Fetter, Car. Pas. §§ 249, 250; *Texas & P. Py. Co.* v. *Cornelius,* 30 S. W. 720; Hutch. Car. §§ 516-521, inclusive; 2 Wood, Railroads, § 1338; Elliott, Railroads, § 1590.

By the exercise of such care as ordinary prudence would suggest for reasonable comfort, it could hardly occur that a waiting room, in midwinter, would be devoid of the means necessary to make it comfortably warm at the times when such rooms are needed to accommodate those intending to become passengers. A failure to provide such means is therefore at least *prima facie* evidence of negligence. It is insisted that the instruction "eliminated all question of diligence and negligence," and made the company an "insurer against the consequences of not having a fire in the waiting room." But the company maintains that it was not negligent, because it built the fire in the waiting room as requested.

It is not complaining of any latent defect or unforeseen exigency which ordinary care could not have anticipated and prevented. It could not have been prejudiced therefore by the instruction in the form given. Moreover, it did not request the court to declare the law to meet the objection it urges here to the instruction. Giving it as requested was not reversible error. *St. Louis, 1. M. & S. R. R. Co.* v. *Barnett,* 65 Ark. 255.

3. The court also gave the following: "If plaintiff went to defendant's depot to take passage on defendant's train, and defendant's agent knowingly permitted it to be locked, or knowingly permitted it to remain locked after being notified that it was locked, so that plaintiff was restrained from going in and out, your verdict will be for the plaintiff."

"A person," says Mr. Wood, "who is in charge of a station by a railway company has apparently all the power and authority requisite to do and effectuate the business of the company at that station. He has control over the depot, and authority to exclude persons therefrom who persist in violating the reasonable regulations prescribed for their conduct." 1 Wood, Railroads, § 165. The authority of railroads to make and carry into execution all reasonable regulations for the conduct of all persons resorting to its depots, so as to protect those who are, or intend to become, its passengers from unreasonable annoyances, insults and injuries cannot be questioned. 1 Fet. Car. Cas., § 247; *Com.* v. *Power,* 7 Met. 596, 41 Am. Dec. 465; Elliott, Railroads, § 303. This authority is the necessary correlate of the duty to provide reasonable accommodations; for a station house to which drunken, profane, obscene, abusive, riotous and otherwise disorderly persons could resort with impunity would not be either comfortable or safe. The willful or negligent failure of railroads to make and enforce such reasonable regulations would render them liable in damages for any injuries directly resultant to those who repaired to their stations for the purpose of becoming passengers.

If appellant's station agent, against the protest of appellee, knowingly permitted the only means of ingress and egress to the waiting room, where appellee was properly in waiting to become its passenger, to be locked, and to be so continued for any length of time, when same by the exercise of ordinary care could have been prevented or discontinued, he was guilty of a tort, and for the wrong thus inflicted upon appellee appellant was liable in damages. For,

in the unlawful imprisonment of the person of appellee and the deprivation of her personal liberty, even though for a moment, without her consent, there was an actionable wrong, an injury to her person, however slight. Field, Dam. § 679; Cooley, Torts, p. 195. § 169; 3 Suth. Dam. § 1257.

Appellant does not contend that its agent exercised ordinary care to prevent the locking of the door, or to have it unlocked after being notified. Its defense on this point is confined to a denial of all knowledge of any such occurrence. The instruction, in the form given, was therefore not prejudicial.

4. Appellant insists that the court erred in giving the following:

"(3). You are instructed that it is the duty of a railroad company to protect all persons who are at its stations for the purpose of taking passage on its trains from annoyances, insults and abuse; and if defendant's agent used toward or about the plaintiff, or in plaintiff's hearing, any profane, obscene or boisterous language, which language insulted or injured plaintiff's feelings, your verdict should be for the plaintiff.

"(6). If you find for the plaintiff in this case, her actual damages will be such sum of money as will be a just and fair compensation for all the pain and anguish, if any, both of body and mind, suffered by plaintiff on account of the injuries received.

"(7). If you find for the plaintiff, you may, in addition to actual damages, award punitive damages as a punishment of the defendant."

What we have already said sufficiently indicates the duty of railroads to those intending to become passengers at their stations. While it is their duty to exercise ordinary care to protect them from unreasonable annoyances, and from insults and injuries, from turbulent, riotous or disorderly persons, yet to make them liable in damages it must be shown that there was an injury, that the agent in charge of the station "had knowledge or opportunity to know that the injury was threatened, and that by his prompt intervention he could have prevented or mitigated it." *Sira* v. *Wabash R. Co.,* 115 Mo. 127, 21 S. W. 905, 37 Am. St. Rep. 386; *Spohn* v. *Mo. Pac. Ry.* 87 Mo. 74, and authorities cited.

The duty of railroads in this respect is therefore not absolute, as the first part of the third instruction assumes. This part of the instruction, however, could not be said to be prejudicial, for the

latter part limits the application of the doctrine to "profane," "obscene," or boisterous language used only by appellant's agent. But the latter part of the instruction is abstract, erroneous and prejudicial. We have searched the record in vain for evidence that appellant's agent used profane, obscene or boisterous language toward or about appellee. The only evidence in the record of any improper language used by the agent at all was that he "began to swear a little at Dick," the boy who requested him to make a fire. Dick Canady, the boy who requested the agent to make a fire, said the agent "cussed," and told him to go on. There is no proof that he cursed appellee, or that what he said to Dick Canady in her hearing was calculated to and did insult her feelings. There is no proof of what the language was. It is not shown to have been said for the purpose of insulting appellee. As the language was not addressed to appellee, in the absence of any evidence as to what the language was, the inference that it was said for the purpose of insulting appellee is not warranted. There is no proof of any connection between the cursing and the acts resulting in physical injury to appellee. Whether the use of profane, obscene and abusive language by station agents, when uttered about or in the presence and hearing of those intending to become passengers, while at stations, and for the purpose of insulting them, or injuring their feelings, would alone make the railroads liable for the mental suffering thereby produced, we need not decide; for that state of facts is not presented by the proof in this record.

It is certain there could be no recovery for mental anguish unaccompanied by personal injury, where there was no willful, wanton or malicious wrong done. Whether there could be recovery for mental suffering alone, where there was willful, wanton, or malicious wrong done, we reserve for decision.

5. The complaint alleges three separate grounds for recovery, to-wit, the failure to build a fire, the failure to prevent the locking of the door, and the failure to protect appellee from insulting remarks. The sixth instruction, on the measure of damages, allows the jury to find for all the pain and anguish of both body and mind, without discrimination or designation of the specific grounds upon which the cause of action is based. This instruction, in view of what we have just said in reference to the third, is erroneous; for under it, in connection with the third, *supra,* the jury were warranted in finding for mental suffering on account of profane, obscene and boisterous language of the station agent.

The jury might have found such damages. Whether or not they did so, and, if so, what amount on this account entered into the verdict, it is impossible for us to tell. The instruction was erroneous and prejudicial.

6. It follows also that it was error to give the seventh as to punitive damages, since the jury may have included punitive damages in their verdict for the use of profane, obscene or boisterous language used by the station agent. Furthermore, under the proof it did not follow as matter of law that the jury might find punitive damages if they found for the appellee. The jury may have found that appellant was liable for compensatory damages on one of the alleged grounds of liability, but it did not follow that because they so found they should also find punitive damages on said ground, unless they should further find that the tort or wrong of the servant in the particular alleged was in the line of his employment, and was willful, wanton, or malicious. The instruction should have been framed so as to leave the jury to determine whether or not the elements essential to punitive damages existed, in connection with any or all of the alleged grounds of liability set forth in the complaint for actual or compensatory damages. We find no other reversible error.

The other questions may not again arise. For the errors indicated, the judgment is reversed, and the cause is remanded for new trial.