Martin T. REECE, Plaintiff-Respondent,

v.

Evelyn I. REED, Defendant-Appellant.

No. 47205.

Supreme Court of Missouri,

Division No. 1.

July 13, 1959.

Robert E. Coleberd, Arthur R. Kincaid, Liberty, Hale, Coleberd, Kincaid & Waters, Liberty, of counsel, for appellant.

Thaine Q. Blumer, Homer C. Bittiker, Kansas City, Blumer & Wright, Kansas City, of counsel, for respondent.

HOLMAN, Commissioner.

In this rear-end automobile collision case plaintiff obtained a verdict for $15,500 for his personal injuries and damage to his automobile. Defendant has appealed from the ensuing judgment and here contends (1) that plaintiff did not make a submissible case against the defendant, and (2) that the court erred in giving Instructions Nos. 1, 2, and 4 offered by plaintiff.

The collision occurred at about 6:45 a. m., June 24, 1957, at the intersection of 10th and Burlington Streets in North Kansas City, Missouri. Burlington is a north-south street, divided by a medial strip, with three 11-foot lanes for traffic in each direction. There is a weight station located on the medial strip 410 feet north of the north line of 10th Street. Traffic signal lights are maintained at the 10th and 12th Street intersections. Plaintiff and defendant were both driving their cars south on Burlington on their way to work in Kansas City.

Plaintiff testified that he was traveling in the center southbound lane and stopped his car at 10th Street because the red light was against him; that his car had remained stationary for "approximately ten to fifteen seconds" while waiting for the light to change when it was struck from behind by the car driven by defendant; that the force of the collision knocked his car entirely across 10th Street (40 feet wide). A photograph in evidence indicated that plaintiff's car was extensively dam-

aged. It also appears that, although he did not seek medical attention for several hours, plaintiff sustained serious injuries as a result of the collision.

Plaintiff also presented the testimony of Officer Brandon who investigated the casualty. He stated that when he arrived at the scene defendant was crying and "fairly hysterical." He took her to the police station where she said that "she had blacked out somewhere in the vicinity of 12th Street."

Defendant's deposition had been taken prior to the trial. Upon the theory that they constituted admissions against interest plaintiff read in evidence certain questions and answers from that deposition which included the following:

"Q. Well, what is the last thing you remember? A. Well, the last thing I remember is going through the 12th Street traffic light. * * *

"Q. So that you accelerated your car after you went through the 12th Street intersection? A. Yes.

"Q. And then you say you have a recollection of being up to the speed of around 33 to 35 miles an hour? A. Yes.

"Q. Now, where were you at that point? A. Well, I was right down there by the weight station, the side of the weight station.

"Q. You were at the side of the weight station then? A. I remember that far. That is all.

"Q. You remember passing by the weight station or being approximately even with it? A. Almost even with it. * * *

"Q. At this time, Mrs. Reed, when you were passing the weight station, which you say is the last time you remember anything * * * you looked and knew there wasn't any traffic either to the left or right of you? A. Yes.

"Q. Were there any vehicles behind you? A. Well, yes, I recall looking in the rear-view mirror. No cars beside me or around me within a car or two car lengths, you know, but in the rear-view mirror there was an automobile coming that my brother has. I thought maybe that was my brother coming to work then.

"Q. I see. A. That was the last I recall. * * *

"Q. You are right at the weight station approaching 10th Street? A. Yes.

"Q. Well, you could, of course, from that distance see the stop light, couldn't you? A. Yes.

"Q. Since you are looking ahead for the stop light you did see it? A. Well, I don't remember what color it was I mean.

"Q. Well, you were close enough that had it been red you would have started to slow like you did back at 12th Street, wouldn't you? A. Yes.

"Q. Well, didn't you, as a matter of fact, start to slow a little bit there as you passed the weight station because the light was red as you approached 10th Street? A. Sir, I don't remember. * * *

"Q. Well, you do remember being at the weight station or across from it? A. Yes, I remember seeing the weight station and wasn't no cars around. I looked in the rear-view mirror. That is the last time I remember. * * *

"Q. Did you hear any sound of a collision? A. No, I didn't.

"Q. When do you first remember anything? A. Well, a man got out of the car. I remember him. He already had the door open and was already outside of his car when I remember.

"Q. And where were you at that time? A. I was in my car."

In presenting her defense defendant testified that she had been suffering from nausea and had suspected that she was pregnant; that she, in fact, did give birth to a child on February 15, 1958; that she had never before had a blackout or dizziness nor had any reason to suspect that she might black out; that on the night before the collision she had taken a pill that had been prescribed for her husband's aunt (when she was pregnant) which apparently was intended to prevent nausea; that she received a bump on the head as a result of the collision and when her memory returned after the collision she was "behind the steering wheel."

Plaintiff's case was submitted to the jury upon the hypotheses "that his car had been standing still for some ten to fifteen seconds * * * and * * * that the defendant was operating an automobile on the same street and traveling in the same direction as the plaintiff * * * and if you further find and believe * * * that defendant's automobile struck the rear of the automobile in which plaintiff was seated, and * * * that the plaintiff's automobile had been standing still long enough so that the defendant by the exercise of the highest degree of care on her part could have stopped her automobile without striking plaintiff's automobile, * * *" and that such was negligence, etc. On behalf of the defendant the court instructed the jury that if it found that at a point more than 400 feet north of the intersection, "while still in the exercise of the highest degree of care defendant blacked out or became unconscious while she was driving her car and continued in such unconscious condition until after the collision of the cars mentioned in evidence * * * then defendant was not guilty of negligence, and your verdict must be for the defendant."

In considering whether plaintiff made a submissible case we, of course, must view the evidence in the light most favorable to plaintiff and disregard all of defendant's evidence except such portions as may aid plaintiff. Defendant's first contention is that there was no evidence to support the submission of negligence contained in plaintiff's main instruction. It is said that there is no evidence as to when she saw or could have seen that there was danger of a collision and no evidence that she could have stopped her car in the available distance. That contention is without merit. In considering this point we will disregard, for the time being, the evidence relating to defendant's blackout.

Defendant was charged with the duty, in the exercise of the highest degree of care, of keeping a careful watch ahead for other vehicles upon the highway in order to avoid injury and damage to others. Thaller v. Skinner & Kennedy Co., Mo. Sup., 315 S.W.2d 124. There was nothing to obstruct her vision and so she must be held to have seen plaintiff's car at the time it was stopped at the intersection. Defendant's car was traveling at about 33 miles per hour (48 feet per second) at the time and plaintiff's car was stationary for at least ten seconds before the collision. It would therefore appear that defendant's car was at least 480 feet to the rear of plaintiff's car at the time it stopped for the red light. While it is true that there was no evidence as to the distance within which defendant could have stopped her car, such was not essential as courts will take judicial notice of the fact that a car going 33 miles per hour may be stopped, under instant conditions, within 480 feet. Perry v. Dever, Mo.Sup., 303 S.W.2d 1. We accordingly rule this point against defendant.

Defendant next contends that plaintiff failed to make a submissible case because his evidence disclosed that defendant blacked out when she was 400 feet or more from the point of collision and hence she is not chargeable with any act of neg-

ligence which may have caused the collision. "By the great weight of authority * * * fainting or momentary loss of consciousness while driving is a complete defense to an action based on negligence * * * if such loss of consciousness was not foreseeable." Annotation, 28 A.L.R.2d 12, 35. See also 5A Am.Jur., Automobiles and Highway Traffic, § 223, p. 365; Cohen v. Petty, 62 App.D.C. 187, 65 F.2d 820; Holmes v. McNeil, 356 Mo. 846, 204 S.W.2d 303; Wells v. Asher, Mo.App., 286 S.W.2d 567. It is evident that the trial court recognized the foregoing rule as indicated by the instruction heretofore set out (in part) which it gave at the request of defendant.

 If the evidence of defendant's blackout had been offered as a part of her case the jury would have been at liberty to reject that evidence (as it apparently did) and could have properly returned a verdict for plaintiff. However, plaintiff offered evidence of defendant's blackout as a part of his case and we must therefore determine whether that evidence destroyed the prima facie case made by other testimony. The rule is well settled that a party is not bound by the unfavorable testimony of one of his witnesses if such testimony is contradicted, but is bound by the uncontradicted testimony of his own witnesses. Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589; De Lay v. Ward, 364 Mo. 431, 262 S.W.2d 628.

Plaintiff unquestionably offered substantial evidence that defendant suffered a blackout prior to the collision. He is bound by that evidence unless there was other evidence in the case which was contradictory thereof. Plaintiff does not contend that the testimony of any other witness tended to contradict that evidence. He relies upon other testimony of defendant to contradict the fact of blackout. Plaintiff points to three facts in defendant's statements and testimony which he says contradict the testimony as to blackout. They are: (1) Defendant testified that she looked in the rear-vision mirror at the weight station (410 feet from intersection) and the next thing she remembered was after the collision. He says that testimony would warrant the inference that, instead of suffering a blackout, defendant continued to look in the rear-vision mirror until her car struck plaintiff's. (2) Defendant also testified that her car was in the center lane at the time she reached the weight station and that she was sitting behind the wheel when her memory returned following the collision. Plaintiff contends that the fact that the car remained in the same lane (after the alleged blackout) for 410 feet, and the fact that defendant was behind the wheel after the collision, are contradictory to the fact that she suffered a blackout. (3) The police officer stated that defendant said she blacked out somewhere in the vicinity of 12th Street, whereas she later testified that the last she remembered was when her car reached the weight station. Twelfth Street is about 1,300 feet from the point of collision and the weight station 410 feet therefrom. Plaintiff says that that discrepancy in defendant's statements is contradictory to the fact that she blacked out.

While some of defendant's statements may indicate the possibility that the collision was the result of her inattention to driving instead of a condition of blackout, we have concluded that those statements are not sufficient substantial evidence to constitute a contradiction of her positive statement and testimony that she suffered a blackout when her car was at least 410 feet from the collision point. None of the facts heretofore mentioned are necessarily in conflict with the fact that defendant suffered a blackout. We have considered the rule that "since a plaintiff has the burden of proof, if he puts on only one witness to prove a fact and his positive statement on direct testimony is that the fact is definitely one way, then the plaintiff cannot have the jury disregard his only direct evidence on the point and find that the fact is exactly the opposite

72

on the basis of inferences from circumstances also stated in the testimony of this same witness." Draper v. Louisville & N. R. Co., 348 Mo. 886, 156 S.W.2d 626, 634. While that rule is not precisely applicable here we think the underlying logic may be applied. Plaintiff, having presented the positive testimony and statement of defendant that she blacked out, may not successfully contend that such evidence was contradicted or destroyed by other testimony from the same witness as to facts which might warrant vague inferences to the contrary.

Plaintiff also contends that defendant did not suffer from an "involuntary blackout" because her condition may have resulted from the nausea pill she took the night prior to the collision, which pill had not been prescribed for her. We find no merit in that contention. There is no evidence whatever that the pill caused or might have caused the blackout and, assuming that it did, there is no evidence that defendant had any reason to suspect that such would be the result of taking the pill.

■ As indicated by what we have heretofore said, we rule that plaintiff's uncontradicted evidence that defendant suffered a blackout when her car was more than 400 feet from the point of collision (which continued until after the collision) destroyed the prima facie case made by plaintiff's other evidence and hence the trial court erred in ruling that plaintiff's case was submissible.

■ We have, however, concluded that in the exercise of a sound judicial discretion we should remand the case for a new trial instead of ruling that it should be reversed outright. This court has often quoted with approval the statement in Smith v. Terminal R. R. Ass'n of St. Louis, Mo.App., 160 S.W.2d 476, 479, that "The furtherance of justice requires that a case should not be reversed without remanding unless the appellate court is convinced that the facts are such that a recovery cannot be had." There are certain restrictions upon that rule but none are applicable here. See Smith v. St. Louis Public Service Co., 364 Mo. 104, 259 S.W.2d 692. We do not know the motive of plaintiff's counsel in offering the evidence as to defendant's blackout. However, it is obvious that such was a misadventure resulting from their failure to fully understand the legal effect of that evidence. It is also obvious that upon another trial plaintiff can make a submissible case and it would therefore seem just and proper that the case be remanded for a new trial.

There appears to be no necessity for us to extend this opinion by discussing the contentions of error in regard to Instructions Nos. 1, 2 and 4. Before another trial, counsel for plaintiff will have the opportunity to re-examine those instructions and to make such corrections as may be considered necessary, in view of the attack made thereon by defendant.

The judgment is reversed and cause remanded for a new trial.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.