Ida A. DONALDSON, Respondent.

v.

Thomas MANZELLA, d/b/a American Cab Company, Appellant.

No. 47740.

Supreme Court of Missouri,

Division No. 2.

July 11, 1960.

Motion for Rehearing or for Transfer to Court en Banc Denied Sept. 12, 1960.

William H. Sanders, Caldwell, Eastin, Blackwell & Oliver, John C. Russell, and Walter A. Raymond, Kansas City, for appellant.

James W. Benjamin, Rogers, Field, Gentry & Jackson, Kansas City, David J. Dixon, Gayles R. Pine, Warrensburg, for respondent.

BARRETT, Commissioner.

Herman Donaldson, age 46, died from injuries sustained when a taxicab was negligently caused to collide with his automobile, and a jury has awarded his widow, Ida A. Donaldson, $25,000 for his wrongful death. The following facts and succession of events, the sequence of their proof and the use made of them by the parties precisely point up the essential problems presented by the appeal of the taxicab company.

The intercity viaduct between Kansas City, Missouri, and Kansas City, Kansas, is a four-lane trafficway with a six-inch concrete medial strip separating the lanes for eastbound and westbound traffic. A Kansas City, Kansas, ordinance has imposed a maximum speed limit of 40 miles an hour on motor vehicles traveling on the Kansas side of the viaduct. Mr. Donaldson's home was in Kansas City, Missouri, but he worked the second shift at General Motors "BOP plant" in the Fairfax District of Kansas .

City, Kansas. On July 30, 1957, Donaldson got off from work at 12:30 a. m., and started home in his automobile, traveling east in a line of traffic moving over the viaduct at a speed of about 40 miles an hour. While he was yet on the Kansas side of the viaduct an American Cab Company taxicab driven by Charles W. Price and traveling in the west traffic lanes at an admitted speed of 40 to 45 miles an hour, without signal or warning, crossed over the six-inch medial line and crashed into Donaldson's automobile pinning it against the south guardrail of the viaduct. A witness driving one car ahead of Donaldson said that when he first saw the taxicab weaving in the west traffic lanes it was "eight to ten car lengths, possibly a little more" away from him and a car length, according to him, was 15 to 18, maybe 20 feet. As stated, Mr. Donaldson died from injuries received in the collision. As to his speed and the ordinance the taxicab driver, Price, had this to say—that he was on the Kansas side of the viaduct, that he was aware of the 40-mile-an-hour speed limit and that he was driving the taxicab across the viaduct at a speed of 40 to 45 miles an hour. Upon proof of these facts and circumstances Mrs. Donaldson rested her case.

The defendant's uncontradicted proof was that the taxicab was waiting for "calls" in a parking lot at 11th and Troost Streets in Kansas City, Missouri, that a more or less drunk Negro boy, Joseph Wayne Hamilton, age 20, walked up to the cab and said, "whose next out." Price said, "I am" and opened the cab door for the boy to get in the back seat. The boy said that he wanted to go to 15th and Minnesota Streets in Kansas City, Kansas. As the taxicab traveled in the west traffic lanes of the viaduct at a speed of 40 to 45 miles an hour the boy asked the taxi driver about "the colored night spots" in Kansas City, Kansas. As Price was "trying to tell him where those were" and as the cab traveled on the Kansas side of the viaduct "something went around my neck." Hamilton,

from the left side of the rear seat and without warning, placed a handkerchief around Price's neck, "it was startling to say the least," according to Price, "and also it was immediate pressure on it, which was choking." As to his ability to breathe he said, "It was hampered. I don't know whether I—I couldn't say definitely the air was completely cut off or anything like that, it was hampered because I did try to use my radio and as I understand it, I did get a message out on the radio." As soon as he felt the handkerchief around his neck Price reached for his "mike," the boy, "holding the tourniquet" with one hand, placed his free hand over Price's face and was pulling him toward the back of the seat and away from the mike, repeatedly warning, "Keep your hands down" and slapping at his right hand when he persisted in reaching for the microphone. All the while the taxicab was traveling at a speed of 40 to 45 miles an hour and Price, driving with his left hand, said, "Well, I tried to apply brake pressure, pressure on my brake, I didn't want to stop fast because I knew there was traffic immediately behind me, and I thought I could stop fast enough to give them a chance to stop without hitting me and without anybody else being involved, and I started applying brake pressure and tried to get the cab over to the right because I was in the center lane." In moving to the right the taxicab scraped the north guardrail and Price "tried to pull back to the left· a little to free that car" but it "went over the medial strip" and crashed into Mr. Donaldson's automobile, the collision injured Price and Hamilton as well as Mr. Donaldson.

In a deposition from the Kansas State Industrial Reformatory, Hamilton claimed, by reason of drinking and injury, to remember very little about the occurrence. He did say, "Well, I remember raising up and looping the handkerchief around the man's neck, but—Well, that's about it. I mean, I put the handkerchief around the man's neck." He says that when Price reached for the microphone, "I remember slapping

at his hand," then "we picked up speed and that is when the accident happened." He held the handkerchief with his left hand but disclaimed applying severe pressure. When asked "Why were you doing this?" he replied, "Why was I doing it? I am afraid I don't know."

As grounds for the recovery of damages for her husband's wrongful death Mrs. Donaldson alleged in her petition that the taxicab driver was negligent in six particular respects: (1) failure to maintain a proper lookout, (2) failure to have his taxicab under control, (3) permitting the taxicab to cross the medial line, (4) failure to warn, (5) excessive speed and (6) *"In negligently undertaking to attempt to radio the American Cab office after a passenger in the rear seat of the taxicab ·had begun an attempt to rob and control the actions of the cab driver, thereby knowingly risking collision with other vehicles, including Donaldson's, on the viaduct."* (Italics supplied for emphasis.) In her instructions Mrs. Donaldson hypothesized the defendant's liability upon a conjunctive finding that the taxicab driver was negligent in that he (a) swerved and operated the taxicab across the medial strip of the viaduct into the south or left half of the viaduct, (b) drove at the dangerous and excessive rate of speed, 40 to 45 miles an hour, in violation of the ordinance, (c) failed to signal or warn, and (d) *"that he attempted to use his radio, over the verbal warnings and physical protest of the passenger Hamilton when, under the circumstances, he knew or in the exercise of ordinary care should have known that such action on his part would be reasonably likely to result in a collision with an approaching vehicle."*

The defendant's answer was a general denial and a plea that Mr. Donaldson was guilty of contributory negligence. And upon the trial of the case there was no converse instruction, there was no instruction on emergency or sole cause, or specifically upon any exonerating factual hypothesis or theory. Nevertheless, in this state of the record, the appellant cab company contends that the trial court should have sustained its motion for a directed verdict for the reason that in these detailed circumstances there was no substantial evidence that the taxicab driver was guilty of any negligence. It is said that the "driver was being assaulted and facing a holdup and his acts or omissions at said time were reflex actions or involuntary actions or omissions under the influence and stress of pressing danger and therefore could not constitute negligence." In presenting its argument the appellant makes thirteen separate objections to the principal instruction and eleven separate objections to the instruction on concurrent negligence and in its original and reply brief, in violation of Supreme Court Rule 1.08, 42 V.A.M.S., the appellant has cited a list of forty-eight cases in support of its claim that a verdict should have been directed. These cases have been considered, however, and aside from obvious factual differences the analogies from the humanitarian doctrine and criminal cases, even those from the instances of sudden illness and blackout of automobile drivers (16 Mo.L.R. 1, 17–22), blowout of tires, brake failures and skidding automobiles, are indeed imperfect in the precise circumstances of this case.

■ Under her evidence in chief the plaintiff obviously made a prima facie case of negligence with respect to one or more of her assignments of negligence, certainly so with respect to speed if not with respect to failure to signal and crossing the medial line and driving the taxicab into Mr. Donaldson's automobile as it traveled in the south traffic lanes of the viaduct. Wood v. Hulsey, Mo.App., 271 S.W.2d 218; Kitchen v. Pratt, Mo.App., 324 S.W.2d 144; Harris v. Hughes, Mo.App., 266 S.W.2d 763. Even before the attempted robbery and Hamilton's interference with his driving (annotation 4 A.L.R.2d 147), Price, admittedly, was driving the taxicab across the viaduct at a speed of 40 to 45 miles an hour in violation of the ordinance and

according to the plaintiff's evidence that speed was maintained until the taxicab crossed the medial line and crashed into Donaldson's automobile. In these circumstances reasonable men (16 Mo.L.R. 1) might well differ and a jury could find that the negligent speed continued and with Hamilton's intervening conduct was a concurring cause of Mr. Donaldson's wrongful death. Caldwell v. St. Louis Public Service Co., Mo., 275 S.W.2d 288; Henry v. First National Bank, 232 Mo.App. 1071, 115 S.W.2d 121; 38 Am.Jur., Secs. 63, 66, 71, pp. 715, 721, 728. The consequence is that the plaintiff having thus made a prima facie case was not subject to having a verdict directed against her. 9 Wigmore, Evidence, Sec. 2494, p. 293. Normally, the plaintiff having submitted her four grounds of negligence conjunctively and there being evidence to support one or more of them, that would end the matter; it would be immaterial whether all of her hypothesized grounds were supported by evidence. Brewer v. Rowe, 363 Mo. 592, 252 S.W.2d 372.

But this case and this record are not the normal situation, the difficulty arises upon the fourth specification in the instruction, that the taxicab driver was negligent in that he attempted to use his radio over the warnings and physical protest of his passenger, knowing that his conduct would result in a collision. It is the plaintiff's position that from the taxicab driver's testimony the jury could find the facts just as they were hypothesized in the fourth specification of the instruction and that such conduct if found supported the inference of negligence. It is the plaintiff's position that the jury was bound to believe only so much of the defendant's explanation of the collision as it found credible, that she is entitled to all favorable inferences and they do not conclusively show that the taxicab driver was acting solely from fright or danger or that his actions were all reflex. Huffman v. Mercer, Mo., 295 S.W.2d 27, 33.

This is not to deny to the plaintiff the favorable inferences from the defendant's evidence (DeLay v. Ward, 364 Mo. 431, 262 S.W.2d 628; Holmes v. McNeil, 356 Mo. 846, 204 S.W.2d 303), or to say that she has called her adversary or his employee (32 C.J.S. Evidence § 1040b, p. 1107) as a witness to prove an essential fact or issue and is therefore conclusively bound by their unfavorable evidence and its inferences. See and compare: Shepard v. Harris, Mo., 329 S.W.2d 1; Reece v. Reed, Mo., 326 S.W.2d 67; Jones v. Chicago, R. I. & P. Ry. Co., 341 Mo. 640, 108 S.W.2d 94; Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40, 159 S.W.2d 589; Dugan v. Rippee, Mo.App., 278 S.W.2d 812. The plaintiff did not call the defendant or its employee as a witness but in addition to hypothesizing the fact in her instruction she alleged in her petition and it was therefore the theory of her case—the equivalent of a judicial admission—that the taxicab driver was negligent in connection with the attempted holdup and its consequent interference with his operation of the taxicab. Annotation 169 A.L.R. 798, 800, 816–820.

There is no claim or proof that the holdup was foreseeable or that it was the duty of the defendant or its driver to anticipate a holdup by Hamilton and his consequent interference with the operation of the taxicab. See Henry v. First National Bank, supra, and David v. Missouri Pacific R. Co., 328 Mo. 437, 41 S.W.2d 179, which classically illustrates the circumstances in which a negligent defendant may become liable for the intervening criminal act of a third person. The respondent points to the permissible inference that Price was not stunned or completely lacking in understanding because of the attempted holdup and urges that during the attempt and thereafter he "took a premeditated course of action at a time when he knew he was driving in excess of the speed limit." It is urged that when he reached for the microphone he "was engaged in a calculated action of his own volition which the

jury had a right to infer was an attempt to save his money and capture the passenger *and was negligent under the circumstances on this crowded viaduct."* Compare: Quinn v. St. Louis Public Service Co., Mo., 318 S.W.2d 316, 323, and Brady v. Kroll, 244 Minn. 525, 70 N.W.2d 354. The difficulty with the argument is that the evidentiary support and submission that the taxicab driver attempted to use his microphone over the warning and protest of Hamilton, knowing that his action would likely result in a collision, is inseparably and inherently a part of the unanticipated robbery and assault. In these circumstances, as Dean Prosser has pointed out, "The question is one of negligence and the extent of the obligation: whether the defendant's responsibility extends to such interventions, which are foreign to the risk he has created. It might be stated as a problem of duty to protect the plaintiff against such an intervening cause.". Prosser, Torts, Sec. 49, p. 276; 2 Harper & James, Torts, Sec. 20.5, pp. 1141–1150; Feezer, "Intervening Crime And Liability For Negligence," 24 Minn.L.R. 635. And upon this record and these particular circumstances there was no breach of duty and the appellant would not be liable for the acts and conduct alleged in the sixth specification of the petition and hypothesized in the fourth submission of the principal instruction. Annotation 78 A.L.R. 471; 2 Restatement, Torts, Secs. 448–449; 65 C.J.S. Negligence § 111, pp. 699–700; Sira v. Wabash Ry. Co., 115 Mo. 127, 21 S.W. 905; Cordas v. Peerless Transportation Co., City Ct., 27 N.Y.S. 2d 198. This phase of the instruction directed and permitted the jury to consider a hypothesis for which there was no liability —the fact that the conduct complained of occurred in the course of an attempted robbery. Reece v. Reed, supra; Kitchen v. Pratt, Mo.App., 324 S.W.2d 144, 148. The submission was conjunctive but "one of the grounds of negligence is an improper statement of the law" and even if a proper statement does not include all the essential facts and therefore was prejudically erro-

neous. Beahan v. St. Louis Public Service Co., 361 Mo. 807, 237 S.W.2d 105; Glowacki v. Holste, Mo., 295 S.W.2d 135; Bowman v. Heffron, Mo., 318 S.W.2d 269; Berry v. Harmon, Mo., 329 S.W.2d 784, 793; Fitzpatrick v. St. L.-S. F. Ry. Co., Mo., 300 S.W.2d 490, 498. Because of the erroneously confusing submission the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

LEEDY, P. J., EAGER and STORCKMAN, JJ., and HUNTER, Special Judge, concur.