PARKS, Respondent, v. ST. LOUIS TRANSIT COM-
PANY, Appellant.

St. Louis Court of Appeals, May 8, 1906.

1. **CARRIERS OF PASSENGERS: Discharging Passenger: Usual
   Stopping Place.** Where a street car stopped at a place where
   cars were accustomed to discharge passengers, and a passen-
   ger, while attempting to alight with the knowledge of the
   conductor, was injured by the sudden starting of the car be-
   fore she had time to alight, she could recover damages for
   the injuries received, although the stop was for the purpose
   of throwing a switch or some other than to discharge passen-
   gers.

2. ——: ——: ——. And such passenger could recover
   without proving that she was invited to alight from the car
   by the defendant's employees, because, being at a place where
   passengers were habitually discharged, the car men were bound
   to hold the car until passengers had a reasonable time to leave
   it.

3. ——: ——: ——: Instruction. And in such case an in-
   struction authorizing a recovery without requiring a finding
   that the car men knew of the passenger's attempt to alight,
   was not error because the conductor testified that he saw the
   plaintiff alighting.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel
D. Fisher,* Judge.

AFFIRMED.

*Boyle & Priest* and *Edward T. Miller* for appellant.

The court erred in giving plaintiff's instruction No.
1. Jackson v. Railway, 118 Mo. 199, 24 S. W. 192; Bach-
sach v. Railroad, 54 N. Y. Sup. 958; Kohler v. Railroad,
99 Wis. 33, 74 N. W. 568; Nellis, Str. Surf. Railroads,
p. 484. The court erred in giving plaintiff's instruction
No. 2. Hite v. Railway, 130 Mo. 132, 31 S. W. 262, 32
S. W. 33; Raming v. Railway, 157 Mo. 477, 57 S. W.

268; Hamilton v. Railway, 89 S. W. 893.    Defendant's instruction No. 3 should have been given.    Waldhier v. Railroad, 71 Mo. 514; Allen v. Transit Co., 183 Mo. 411, 81 S. W. 1142; Pryor v. Railway, 85 Mo. App. 367.  Defendant's refused instruction No. 6 should have been given.    Hoolan v. Bailey, 38 Mo. App. 585; Walsh v. Transportation Co., 52 Mo. 483.    The existence of such usage or custom was not shown to have come to the knowledge of the governing officers of defendant, and defendant could not be bound in the absence of such showing.    Johnson v. Railroad, 44 N. H. 213, 88 Am. Dec. 199.

*Wm. R. Gentry* for respondent.

STATEMENT.—This action was instituted to recover damages for a personal injury sustained by plaintiff while a passenger on one of defendant's trolley cars of the open or summer pattern, with running-boards along the sides.    The accident occurred at the intersection of Grand and Lucas avenues in the city of St. Louis, about eight o'clock in the evening of June 8, 1904.    Plaintiff was at that time more than fifty years old and of stout figure, weighing nearly 190 pounds.    She and her husband resided in East St. Louis, Illinois.    A son of theirs resides on Easton avenue in the city of St. Louis, and they had been to visit him on the evening of the accident. Not finding him at home they started to return to their home, taking passage on a southbound Grand avenue car at Easton avenue.    Mr. Parks paid the fare for himself and wife and was given transfers to the eastbound car line which left Grand avenue at Lucas avenue.    Double car tracks turn from Grand into Lucas at the intersection of the two streets, and the points of the switch by which cars are diverted into Lucas, lie on Grand a few feet north of the north line of Lucas.  Owing to this fact, when a southbound Grand avenue car draws near

Parks v. Transit Co.

the switch, it slackens speed, or pauses, until the switch point is adjusted so that it can proceed on its way along Grand avenue instead of being diverted to Lucas. Sometimes it is necessary to come to a full stop in order to adjust the switch, and at other times the motorman is able to adjust it while the car is moving at slow speed. This diagram will illustrate the position of the several car tracks at the point in question:

EXHIBIT A.

According to the ordinances of the city and the general custom of the defendant company, passengers who wish to get off at Lucas avenue leave the car, in most instances, not when the car slows down or pauses at the switch, but on Grand avenue where the south line of Lucas would cross it if extended. There was some testimony that occasionally cars stopped to discharge passengers in what would be the driveway of Lucas avenue if it was extended across Grand. This would be in accordance with the known fact that street cars are not always stopped at exactly the usual place for letting off and taking on passengers. Now and then they come to a stop several yards before the usual point is reached, and again, not until it has been run past that far. There was evidence going to show that passengers were discharged, now and then, at or near the north line of Lucas avenue. This occurred when a southbound car on Grand avenue stopped at the switch points; and the usage was so far recognized by the defendant company, that, when a car actually stopped there to await the throwing of the switch, it was the custom not to move forward again until the conductor gave a starting signal; so that if a passenger happened to be getting off, the car would not be started while he was in the act. The conductor of the car on which plaintiff was riding gave testimony to that effect, as did other witnesses. The evidence leaves a great uncertainty as to whether the particular car with which we are concerned stopped still at the apex of the switch, or only reduced speed until it was moving slowly, and whether it was standing still or moving when plaintiff endeavored to alight. Several witnesses, including plaintiff, testified that it had stopped; others that it never ceased to move, but that its speed became quite slow and it was in slow motion when she tried to alight. Plaintiff testified that when she and her husband started to leave the car, it was standing at the south line of

Lucas avenue, which defendant contends was the usual stopping place. Another witness gave testimony going to show plaintiff's attempt to leave the car was made when its rear end was about the middle of Lucas avenue; and still another, that they did so when its rear end was at the switch point and its front end in the middle of Lucas avenue. Plaintiff's husband got off the car and plaintiff attempted to follow him. He held up his hands to assist her and just as she stepped on the running-board, the car either suddenly started from a motionless state, or took on an accelerated speed, and she was thrown on the street and injured. Plaintiff testified that when the car stopped at the switch the conductor cried out "Downtown transfers;" thereby signifying that passengers who wished to transfer to a Lucas avenue car should get off at that point. The conductor admitted making the exclamation, but said he did so, not at the switch, but north of it, and that he always gave a similar notice immediately after passing the next cross-street to the north. The testimony of plaintiff's physician goes to show she sustained a severe shock which resulted in neurasthenia and hysteria of a permanent type; whereas the physicians who testified in behalf of defendant give the impression that whatever nervousness she was suffering from was due largely to her general state of health and excessive stoutness. We need not particularize about the injuries, because the errors assigned do not go to the amount of damages awarded.

The instructions given and refused which bear on the points to be decided will be copied. For the plaintiff the court instructed as follows:

"P. 1. The court instructs the jury that if you believe and find from the evidence in this case, that on the 8th day of June, 1904, the defendant was a carrier of passengers for hire by street railway in the city of St. Louis, Missouri, and used the car mentioned in the evidence for said purpose; and if you further find from the

evidence that on said day the defendant's employees in charge of the south-bound car on its Grand avenue line, mentioned in the evidence, received plaintiff as a passenger upon said car at or near Easton avenue in said city, and that the conductor in charge of said car collected plaintiff's carfare from her husband and gave him a transfer for plaintiff to be used on defendant's Washington avenue line; and if you further believe and find from the evidence that when said southbound Grand avenue car arrived at or near Lucas avenue, it stopped; and if you further find from the evidence that the place where said car stopped on said occasion was a usual and customary place for defendant's southbound Grand avenue cars to stop and discharge passengers, and that it was a usual and customary transfer point for passengers on southbound cars on said Grand avenue line to transfer from said line to defendant's Washington avenue line; and if you further find from the evidence that while said car was so stopped at said place, the plaintiff undertook to alight from said car, and that while she was proceeding to alight therefrom and before she had safely reached the ground, and before she had reasonable time and opportunity to alight safely, defendant's said employees in charge of said southbound Grand avenue car negligently caused, or suffered said car to be suddenly started forward with a jerk and that thereby plaintiff was thrown upon the street and injured; and if the jury further find from the evidence that defendant's said servants in charge of its said car could, by the exercise of a high degree of care such as would have been used by careful and skillful men under like circumstances, have prevented such starting of said car at such time, and the alleged injury to plaintiff, and failed to do so; and if the jury further find from the evidence that the plaintiff, prior to and at the time of attempting to alight from said car was exercising ordinary care for her own safety in doing so, under all cir-

cumstances shown in the evidence, then plaintiff is entitled to recover.

"P. 2.  The court instructs the jury that if you find from the evidence in this case that while the plaintiff was a passenger on the southbound Grand avenue car referred to in the evidence, said car stopped at or near Lucas avenue, whether for the purpose of enabling the motorman in charge of said car to throw a switch, or for any other purpose and that while said car was so stopped and standing still, the plaintiff undertook to alight therefrom, then it was the duty of the defendant not to start said car while the plaintiff was in the act of alighting and known to the conductor having charge of the same; and as a common carrier of passengers, it was defendant's duty to give plaintiff a reasonable opportunity to alight from its car before starting the same, if the fact that the plaintiff was attempting to alight was known to the conductor in charge of the car.  And if you believe and find from the evidence that while said car was so stopped, the plaintiff was in the act of getting off said car with the knowledge of the conductor of said car, and while in the exercise of ordinary care on her part, and that said car was carelessly and suddenly started forward with a jerk while plaintiff was so getting off, and before she had a reasonable time to do so, and that she was thereby thrown down upon the street and was injured, then the defendant is liable, and your verdict should be for the plaintiff."

For the defendant the court gave this instruction:

"A.  The court instructs the jury that if you find and believe from the evidence that plaintiff attempted to alight from defendant's car before the same had stopped to receive or discharge passengers, and while the same was in motion, and that such action on her part directly caused or contributed to bring about the injuries complained of, then the plaintiff cannot recover and your verdict must be for defendant.

"B.   The court instructs the jury that if you find from the evidence that defendant's car was not stopped at the usual place for taking on and discharging passengers, nor for that purpose, but was slowed down or stopped before it reached such point in order to open a switch, and shall further find that defendant's servants in charge of said car had not been notified by plaintiff of her intention to alight at said point, and that neither of said servants knew of plaintiff's intention to so attempt to alight from said car at said place, and that plaintiff without notice of her intention so to do, attempted to leave said car at said place, and while in the act of alighting said car was moved forward by the servants in charge of defendant's car without any notice or knowledge upon the part of either of them that plaintiff was making or about to make such attempt, then plaintiff cannot recover in this action and your verdict must be for defendant.

"C.   If you find and believe from the evidence that plaintiff attempted to alight from defendant's car while the same was in motion, then plaintiff cannot recover and your verdict must be for defendant."

The court gave certain instructions of its own motion defining the meaning of ordinary care and the burden of proof.

The following instructions were requested by defendant and refused:

"D.   3.   The court instructs the jury that the mere fact, if it be a fact, that plaintiff was injured while attempting to alight from one of defendant's cars does not entitle plaintiff to recover.   Before you can find a verdict in favor of plaintiff and against defendant you must find and believe from the evidence that the car mentioned in the evidence came to a stop for the purpose of discharging passengers, and while so stopped and while plaintiff was in the act of alighting from the same, it was negligently caused and suffered by defendant's

agents in charge of the same to start forward with a lurch or jerk, thereby causing plaintiff to fall and receive the injuries complained of.

"D. 4. The court instructs you that by the terms of the city ordinance read in evidence by defendant St. Louis Transit Company, said company was required to stop its cars on the south side of Lucas avenue for the reception and discharge of passengers and had a right to rely upon the observation of that ordinance by the persons taking passage on its cars, and the mere fact, if it be a fact, that the car in question was slowed down or stopped on or near the north side of Lucas avenue before crossing, is of itself no evidence whatever of an invitation for plaintiff to alight at that place, nor is it any evidence of negligence on the part of said St. Louis Transit Company.

"D. 5. The court instructs the jury that if you find from the evidence that defendant's car upon which plaintiff was a passenger had not yet reached the usual stopping place at the southwest corner of Grand and Lucas avenues for receiving and discharging passengers, but was slowed down or brought to a stop before reaching the said usual stopping place in order for the motorman to throw a switch and was not stopped or slowed down at said point in order to receive or discharge passengers, and that while the car was so stopped or slowed down plaintiff attempted to leave the same and while so in the act of leaving said car, said car was moved forward, and plaintiff was thrown and injured, then plaintiff cannot recover in this action and your verdict will be for defendant.

"D. 6. Although you may believe from the evidence that at and before the time of the accident and since that time many persons have gotten on and off southbound cars while said cars were stopping at or near the switch on the north side of Lucas avenue, still the court declares to you as a matter of law that this fact,

if it be a fact, does not establish or tend to establish the existence of a custom that is binding upon defendant St. Louis Transit Company in the absence of evidence that such conduct of passengers was known to some officer or agent of said Transit Company having authority on behalf of said company to approve or permit it."

The cause of action declared on is thus stated in the petition:

"Plaintiff further states that at or near the intersection of Grand and Lucas avenues, said Grand avenue car was caused by the agents and servants of defendant in charge thereof, to stop and plaintiff was invited by defendant to alight from said car.

"Plaintiff further states that while said car was standing still and motionless at said time and place, plaintiff undertook to alight from said car upon the street. But plaintiff states that at said time and place the defendant, through its agents and servants in charge of said car, unmindful of its duty and agreement, negligently failed to allow the plaintiff reasonable time and opportunity to alight from said car, but did so negligently, carelessly and unskillfully operate said car that while plaintiff was proceeding to alight threfrom, said car was by said servants negligently caused and suffered to be suddenly started forward with a jerk and plaintiff was thereby thrown down upon the street and seriously and painfully injured."

The petition then states the extent of the injuries received by the fall.

GOODE, J. (after stating the facts).—The witnesses disagreed on the issues of whether the car was standing still or moving when the plaintiff attempted to leave it and, if standing still, where it stood with reference to the intersection of Grand and Lucas avenues. But there was no disagreement regarding the fact that passengers were let off cars at any of the three points

where it may have been standing, namely; at the apex of the switch which was just north of the north line of Delmar avenue, at the south crossing, or in the driveway where the two streets crossed. As we have stated, there was testimony that sometimes, after a car proceeding southward on Grand avenue had passed over the switch points and stopped to the south of them to let off and take on passengers, it would not succeed in stopping with its rear platform immediately over the south crossing, which it was the intention to do, but would come to a stop before the rear steps or platform had reached the crossing; and then passengers were received and discharged where the car stood. This custom obtains in some measure at all crossings, because cars cannot be stopped always at the exact line where it is most convenient to get on and off. The weight of the testimony for plaintiff goes to prove the car stopped on the south crossing, where, of course, plaintiff and other passengers were to be expected to alight and the conductor should have looked after their safety. Defendant's witnesses swore the car was north of the switch points when the accident happened and most of them swore it was in motion. The conductor of the car was an eyewitness of the accident and he swore no stop was made; that the motorman threw the switch while the car was in motion and that when plaintiff fell the front of the car was fifteen feet south of the switch. If this statement was true, the car was moving over the switch at the time. Defendant proved a custom to hold stationary cars which had stopped at the apex of the switch for the switch to be thrown, until any passenger who might try to get off at that point had time to do so. On this issue the conductor said:

"The only time it was stopped was when some motorman, when he pulled up to the switch and came to a full stop; that is not necessary; but when they do come to a full stop there, they stop until they receive two

bells, so if any passenger is getting off you couldn't go ahead until they get off.

"Q. Do I understand you to say there are times when it is necessary for the motorman to bring the car to a full stop? A. If the switch is working hard, he might.

"Q. Except when the switch is working hard and you make the stop under the circumstances you have mentioned, tell the jury whether or not the car stops there at any other time? A. I can't understand that question.

"Q. Did the car stop there to receive or discharge passengers there at all? A. Well, the car is not supposed to stop there to discharge or let on passengers unless under those circumstances that they had to stop to throw the switch or close it.

"Q. Tell the jury whether or not you had, in fact, stopped there to throw the switch? A. We hadn't stopped. The switch was out of order. The electric switch was out of order. It had been used for some time with a hand switch-bar, and it worked easily, and they kept it in good repair for a hand switch-bar and he threw it on the fly, made the switch and went on."

The conductor said, too, that he saw plaintiff in the attempt to alight and was about five feet from her. He swore in this connection as follows:

"Q. When you saw Mr. Parks about to get down was the time you warned them? A. It was he that was getting down.

"Q. He got out ahead of Mrs. Parks? A. Yes, sir; she was standing up in the aisle.

"Q. You were about five feet away from them? A. Yes, sir.

"Q. North of them? A. South of them—no, sir; north of them, toward the rear end of the car.

"Q. North of them? A. Yes, sir.

"Q. You saw Mr. Parks get down, did you? A. Yes, sir.

"Q. You were looking right at Mrs. Parks when she got up out of her seat and went to the edge of the car and started to get down? A. Yes, sir.

"Q. You saw her as plainly as you see me? A. Yes, sir.

"Q. There is no doubt but you did see her in the act of getting down off this car; isn't that true? A. Yes, sir."

In view of the foregoing facts it is clear that the question which chiefly bore on plaintiff's right to a verdict was whether or not the car was still or in motion when she tried to leave it. If it was standing still, as the conductor was in a few feet of her and looking at her, beyond doubt it was his duty to detain it if possible until she had an opportunity to get off in safety; and this is especially true in view of the fact that,wherever the car may have been at the time, the place was one where the company was in the habit of discharging passengers. In the given instructions for both parties, the court forbade a recovery if the car was moving when plaintiff attempted to leave it. There might be a doubt about her right to damages if it was moving very slowly and the speed was suddenly accelerated, but that question is not before us. Defendant was given the full benefit of its contention against her right if the car was moving. Complaint is preferred against the second instruction for plaintiff, wherein the jury were told that if the car had stopped for any purpose, either to throw the switch, or some other, and plaintiff was hurt by a sudden start while attempting with the knowledge of the conductor, to alight, she might recover. The doctrine of that instruction is sound and, as said, it was particularly applicable to the facts of the present case, because the car had stopped at a point where passengers were habitually discharged. In a cause very similar to this one, but lacking the important fact just mentioned, an

instruction like the one under review was approved. In discussing the matter the court said:

"If as a matter of fact the car had come to a full stop sixty-five feet south of the Ninth street crossing, and the passengers were alighting from it, with the knowledge of the conductor, certainly it would have been negligence for the servants of the company to have started the car suddenly forward without warning to the passengers, or giving them an opportunity to alight, when they were in the very act of leaving the car, which was an open summer car; for in the very nature of such cars, it would require but a moment to afford the opportunity of alighting." [Jackson v. Railroad, 118 Mo. 199, 224.]

The second instruction is criticized for allowing plaintiff to recover without proving she was invited by defendant's servants to alight from the car. As all the evidence, defendant's as well as plaintiff's, show that if the car had stopped at all, it was at a point where passengers were habitually discharged, there was enough of an implied invitation to plaintiff, or any other passenger, who wished to alight, to do so; and to put the carmen on the alert and charge them with the duty of holding the car until passengers had a reasonable time to leave it. The essence of the case pleaded was that they failed to do this and, instead, negligently started the car from a motionless state while plaintiff was in the act of leaving it.

The first instruction given at plaintiff's request is attacked as erroneous in that it omitted to require a finding, not only that the car had stopped at the usual and customary place to discharge passengers when plaintiff attempted to alight, but that defendant's servants knew of her attempt. The instruction, as given, is said to make defendant liable for non-performance of a duty which it owed passengers getting off at a regular stopping place; whereas the facts of the accident show

the stop was not at the regular place of stopping, which was on the south side of Lucas avenue, some forty feet or more away from the point where plaintiff fell. As the conductor himself swore he saw plaintiff alighting and at a point where the usage was to let off passengers, these criticisms must be regarded as immaterial.

The third instruction requested by defendant was properly refused, because it was not essential to plaintiff's recovery that the car should have stopped for the purpose of discharging passengers. If it stopped to throw the switch and plaintiff, while getting off before the conductor's eyes, was hurt in consequence of his carelessness, she had a case, unless carelessness of her own contributed to the accident.

What we have said answers the assignment of error for the refusal to give defendant's fourth instruction. It is true that the city ordinance required defendant to stop its cars on the south side of Lucas avenue to receive and discharge passengers; but the ordinance did not prohibit defendant from stopping elsewhere for those purposes, and if it was accustomed to do so, it is responsible for an accident due to careless starting while a passenger was alighting.

For similar reasons and because of the conductor's admission that he saw plaintiff getting off the car, the fifth and sixth instructions asked by defendant were incorrect. The fifth denied her redress if the car had stopped for the motorman to throw the switch, and the sixth one ignored the effect of the conductor's statement, that the custom of letting passengers off at the switch point, was so well established that cars were detained until anyone getting off had time to reach the ground in safety.

This cause was tried without reversible error and as there was ample evidence on the several issues of fact for the consideration of the jury, the judgment will be affirmed. All concur.